IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GAVIN CLARKSON,

        Plaintiff,

                      No. 2:18-cv-00870-KRS-GBW

v.

BOARD OF REGENTS OF THE
NEW MEXICO STATE UNIVERSITY,

        Defendant.

### ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S "COUNTER MOTION" TO AMEND

Gavin Clarkson, a former associate professor at New Mexico State University, sued the Board of Regents in state court after he was fired in April 2018. Clarkson alleges NMSU wrongfully terminated him, violated his due-process rights, breached a contract for professional leave, and discriminated against him because of his race and age. The Board subsequently removed the matter to federal court. Now before the Court is the Board's motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss all but one count of Clarkson's complaint. (Doc. 14). For his part, Clarkson agrees his complaint is deficient. He asks the Court to dismiss three counts, one for wrongful termination and two for discrimination. By "counter motion"[1] contained in his response brief, Clarkson seeks leave to amend the due-process claim. (Doc. 20). The remaining breach of contract count would remain unchanged and is not a subject of the Board's motion. The Board contends the proposed complaint attached to Clarkson's response

---

[1] The Court is not sure what a "counter motion" is. Typically requests for affirmative relief must be in the form of a separately filed motion, not a response to a motion. *See* Fed. R. Civ. P. 7. The Court addresses the "counter motion" here but advises the parties in the future to file motions separate from responses for clarity and to ensure each party has a full opportunity to respond and reply.

remains fatally flawed. With the consent of the parties to conduct dispositive proceedings, *see* 28 U.S.C. § 636(c); (Doc. 10), the Court has considered the parties' submissions. Having done so, the Court **GRANTS** the Board's motion to the extent Clarkson agrees Counts I, IV, and V should be dismissed and Count II asserts a claim under the New Mexico Constitution; **DENIES** the motion in all other respects; and **GRANTS** in part Clarkson's "counter motion" to amend.

## BACKGROUND

### Facts

Clarkson is a forty-nine-year-old member of the Choctaw Nation. (Doc. 1-1, Compl., ¶ 1) He earned a J.D. from Harvard Law School and a Ph.D. from the Harvard Business School. (*Id.*, ¶ 2). Clarkson is a prolific author "on both intellectual property strategy, tribal finance and economic development." (*Id.*, ¶ 3). He is also a "leading scholar on tribal finance and economic development." (*Id.*). Garrey Carruthers originally recruited Clarkson to NMSU's College of Business "to do Indian stuff," which meant, among other things, acting as a faulty sponsor of the Native American Business Students Association and "increasing the amount of tribal finance and economic development research at NMSU." (*Id.*, ¶4). During his time as an associate professor, Clarkson authored more law review articles than the entirety of the remaining business-law faculty. (*Id.*).

In early 2017, Clarkson alleges NMSU "attempted to discriminate against and terminate [him]." (*Id.*, ¶ 13). Clarkson says faculty falsely accused him of plagiarism and submitted "a defamatory dossier" to his supervisors. (*Id.*). Clarkson claims he is the foremost expert in tribal finances and insists the accusation amounted to a claim that he had plagiarized himself. (*Id.*). This effort to get Clarkson fired was in addition to a comment in 2014 by Dean James Hoffman that Hoffman "would prefer someone other than Dr. Clarkson to run a specific Native American

program because he wanted someone who looked more like a New Mexican Indian." (*Id.*, ¶ 16) (internal quotation marks omitted).

In June 2017, Clarkson was tapped to be the Deputy Assistant Secretary for Policy and Economic Development at the Department of the Interior. (*Id.*, ¶ 5). To allow him to take the position, Clarkson applied for and was granted "a professional leave of absence until January 2020" pursuant to Section 85-3 of NMSU's Administrative Rules and Procedures. (*Id.*, ¶ 7). Clarkson further asked for an option to extend leave an additional twelve months and, upon return, to "take control of the Indian Resource Development Program" but Provost Dan Howard denied these requests. (*Id.*, ¶¶ 9-10). Clarkson's "tenure clock," however, was to be paused until the Fall of 2020. (*Id.*, ¶ 8).

When the Trump administration asked Clarkson to serve, Clarkson was preparing to teach an online class at NMSU. (*Id.*, ¶ 12). He asked the Department of the Interior for an ethics clearance to teach the course while employed as a deputy assistant so as not to abandon his students. (*Id.*). The Department of the Interior cleared Clarkson to move forward with his online course. (*Id.*).

While in Washington, D.C., Clarkson decided to run for Congressman Steve Pearce's soon-to-be-vacant seat as Pearce pursed the New Mexico governorship. (*Id.*, ¶¶ 18, 23). Clarkson resigned from his post with the federal government on December 29, 2017 and returned to Las Cruces by January 1, 2018. (*Id.*, ¶¶ 23, 26). NMSU ultimately claimed Clarkson's resignation revoked his professional leave. (*Id.*, ¶24). Clarkson describes NMSU's revocation as "unilateral" and says it was "wrongful." (*Id.*, ¶¶11, 24).

On January 4, 2018, the head of the Finance Department Harikumar Sankaran emailed Clarkson "assuming" Clarkson would return to teach for the Fall semester. (*Id.*, ¶27). Sankaran

made no mention of Clarkson's leave being cancelled or Clarkson teaching in the Spring. (*Id.*) Clarkson replied that he was running for Congress, presumably meaning that Clarkson thought his professional leave until 2020 was in full effect. (*Id.*, ¶28). According to Clarkson, Sakaran then reminded the Provost that Clarkson was on leave "even through the Fall of 2018." (*Id.*, ¶29).

Clarkson formally announced his candidacy for Congress on January 8, 2018. (*Id.*, ¶ 31). Local and national news outlets ran stories on Clarkson's candidacy and highlighted his Native American heritage and his preeminence as a tribal finance scholar. (*Id.*, ¶ 32). Thereafter, the Provost and NMSU's general counsel spoke to determine how to respond to Clarkson's candidacy. (*Id.*, ¶ 33). Meanwhile, Sankaran asked Clarkson to schedule a meeting with Sankaran, the associate dean, and dean to discuss Clarkson's leave status. (*Id.*, ¶ 34). The Provost, however, intervened. (*Id.*, ¶ 35). He wanted to speak with the dean before the dean met with Clarkson. (*Id.*). The Provost claimed to have "new information," and, according to the general counsel, wanted to send Clarkson a letter outlining options. (*Id.*, ¶ 35, 37).

On January 12, 2018, Clarkson attended the finance department's faculty meeting. (*Id.*, ¶ 38). He informed colleagues he was running for Congress and remained on leave. No one disputed Clarkson's leave status, "and it [was] confirmed that he is not on the schedule to teach in the Spring of 2018." (*Id.*, ¶ 38). Later that day, the Provost sent Clarkson a letter "revoking his leave and demanding that he either resign immediately or return to campus the next business day." (*Id.*, ¶ 39).

Clarkson attempted to call the Provost immediately after receiving the letter. (*Id.*, ¶ 40). The Provost had left for the day, the Friday before a long weekend. (*Id.*, ¶ 40). Despite NMSU's claims that Clarkson was no longer on leave and expected him to teach for Spring 2018, Clarkson did not receive a paycheck for the first pay period of the semester. (*Id.*, ¶¶37-41). On

January 16, 2018, Clarkson attended the College of Business convocation and checked in with Sankaran. (*Id.*, ¶43).

Clarkson claims that on the day he checked in, Sankaran raised in an email to the Provost general counsel's "disparaging remarks regarding Dr. Clarkson's presence on campus" and "in that same email, there was a discussion about hindering Dr. Clarkson's run for Congress." (*Id.*, ¶44). No mention was made by general counsel of other faculty's absence, and Clarkson claims general counsel made the comments "presumably because Dr. Clarkson had previously flown back to Houston to take care of his teenage son and elderly mother." (*Id.*). In any event, the Provost thereafter required Clarkson to be on campus at all times and "go up for tenure two years earlier than promised in the grant of professional leave." (*Id.*, ¶ 47).

The Provost called Clarkson on January 17, 2018 and told Clarkson that his leave "was automatically cancelled the moment that Dr. Clarkson resigned his position with the Presidential administration." (*Id.*, ¶ 48). The Provost stated the he knew Clarkson was leaving the Department of Interior as of November 2017 and that Clarkson was expected back for the 2018 Spring Semester. (*Id.*). In fact, Provost told Clarkson he "was desperately needed on campus," a statement that Clarkson claims was pretextual. (*Id.*, ¶ 50). The Provost also said that leave was only for the specific position within the administration, despite the absence of any such conditions in writing being placed on Clarkson. (*Id.*, ¶ 49). Clarkson informed the Provost that he would teach while on leave "if there was a curricular need." (*Id.*, ¶ 50). The Provost told Clarkson to work out an arrangement with the dean. (*Id.*). Clarkson called the dean and reiterated his offer to teach while on leave. (*Id.*, ¶51).

On January 19, 2018, Sankaran scheduled Clarkson to teach "three intensive 'mini-mester' courses, one of which Dr. Clarkson had never taught and one of which he had never

taught in the 'mini-mester' format." (*Id.*, ¶52). Sankaran also asked Clarkson to meet with Sankaran and the dean to discuss the assignments. (*Id.*, ¶53). On January 23, 2018, Clarkson was "ambushed" by a meeting with the Provost and general counsel. (*Id.*, ¶ 54). Clarkson declined to participate further without his own attorney but did point out that he had not been returned to the payroll. (*Id.*). Clarkson voiced his belief that had he really been expected to teach, he would have been paid at least once since it was already midway through the second pay period of the Spring semester. (*Id.*).

On January 24, 2018, Clarkson received an email from human-resources director Ralph Lucero with a proposed letter of termination from the Provost. (*Id.*, ¶ 56). Curiously, the next day, human resources emailed Clarkson letting him know he had been returned to work as of January 16, 2018 and would receive a paycheck as of January 31, 2018. (*Id.*, ¶57). Clarkson appealed the proposed termination. (*Id.*, ¶ 58). Clarkson also requested documents to support his appeal. (*Id.*). NMSU refused to provide the materials on the basis of attorney-client privilege. (*Id.*, ¶59).

According to Clarkson, NMSU engaged in hostile actions against him following these events. (*Id.*, ¶ 60). Clarkson, for example, had to escalate a request to reserve a room on behalf of the college republicans to the highest levels because he was met with "aggressive hostility." (*Id.*). NMSU relented only after Clarkson pointed out that Steve Pearce, Congressman and distinguished alumnus, would attend the college republicans' organizational meeting. (*Id.*).

In late February, Clarkson agreed to postpone his "Pre-Action Determination Hearing," the first step in challenging Clarkson's proposed termination. (*Id.*, ¶61). After other delays and refusals of Clarkson's document requests, the hearing took place on April 13, 2018. (*Id.*, ¶ 62). Ralph Lucero, who was selected by and reports to the Provost, was the hearing officer. (*Id.*, ¶

63). The Provost acted as the "lead prosecutor." (*Id.*). The hearing officer did not recuse himself despite Clarkson's objections to what he felt was a conflict of interest.

During the hearing, the Provost and dean testified that they did not take action against Clarkson until after Clarkson announced his bid for Pearce's seat. (*Id.*, ¶64). The Provost agreed that "nothing in the grant of professional leave gave the Provost the authority to unilaterally cancel the leave." (*Id.*, ¶65). The hearing officer ruled against Clarkson. (*Id.*, ¶66). Clarkson asserts the hearing officer applied the incorrect proof standard and against the incorrect party. (*Id.*, ¶ 67). The hearing officer did criticize the Provost and dean for "antagonistic" communication with Clarkson. (*Id.*, ¶68). Despite a five-day appeal period, NMSU sent a termination notice before that window expired. (*Id.*, ¶69). Clarkson was also offered his position back under the condition that he remain on campus at all times. (*Id.*). According to Clarkson, this "office arrest" was designed to prevent him from running for office. (*Id.*).

On April 25, 2018 Clarkson filed an appeal of the hearing officer's decision to the faculty senate. (*Id.*, ¶70). Despite the pending appeal, Clarkson's employment was officially terminated on April 30, 2018 (effective April 27, 2018). (*Id.*, ¶71). Clarkson believes NMSU chose this date to coincide with his son losing health insurance coverage and to put additional pressure on Clarkson. (*Id.*).

## Procedure

On July 27, 2018, Clarkson sued the Board in New Mexico's Third Judicial District Court for Dona Ana County. (Doc. 1-1). In his five-count complaint, Clarkson alleges that the Board wrongfully terminated him under state law (Count I); denied him due process under the New Mexico and federal Constitutions (Count II); breached a contract under state law (Count III); and discriminated against him based on race (Count IV) and age (Count V) contrary to

federal law. (*Id.*, ¶¶ 72-103).  In addition to money damages, Clarkson seeks an injunction preventing NMSU from processing his termination until he has exhausted all appeal remedies and undoing all actions since April 26, 2018. (*Id.*).

The Board removed the case on September 14, 2018, invoking the Court's federal-question jurisdiction. (Doc 1).  Thereafter, the Board filed the instant motion to dismiss. The Board asserts that Clarkson's complaint does not state a plausible cause of action except for Clarkson's breach of contract claim.  In his response, Clarkson largely agrees.  He asks the Court to dismiss Count I for wrongful termination, dismiss Counts IV and V without prejudice for race and age discrimination so that he may exhaust those claims with the EEOC, and by "counter motion" for leave to add additional parties to bolster Count II's due-process challenge. In its reply, the Board contends that Clarkson's new complaint (attached to Clarkson's response) remains deficient and amendment would be futile.

**STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a pleading within its four corners. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). A complaint is sufficient when it "allege[s] facts that, if true, state a claim to relief that is plausible on its face." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2014) (internal quotation marks and citation omitted).  "Plausibility" asks whether, under the substantive law that governs the claims alleged, the plaintiff has pleaded facts that "raise a right to relief above the speculative level." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012); *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008). In determining if a complaint survives a motion to dismiss, the Court must assume the truth of the facts in the pleading, take those facts in the light most favorable to the plaintiff, and assess whether they give rise to a

reasonable inference that the defendant is liable in light of the applicable law. *See Mayfield*, 826 F.3d at 1255.

**DISCUSSION**

Clarkson concedes his wrongful-discharge claim fails to state a cognizable cause of action. *See* (Doc. 20, Pl.'s Resp. at 1) ("Dr. Clarkson does not oppose dismissal of this cause of action"); (Doc. 14, Def.'s Mot. Dismiss, at 2) (Clarkson fails to plead that he was discharged in retaliation for "perform[ing] an act that public policy has authorized or would encourage"). The Court agrees and dismisses Count I with prejudice because New Mexico law does not recognize a claim for retaliatory discharge premised on "[a] citizen's right to pursue and hold public office" as protected activity as Clarkson alleges here. *See Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 850 P.2d 996, 1007 (N.M. 1993). Clarkson also admits he did not exhaust Counts IV and V for discrimination but asks for dismissal without prejudice. (Doc. 20, at 2). The Court grants Clarkson's request. Although the Board identifies other deficiencies with Counts IV and V, the Court declines to reach them here; the Board may raise those issues if Clarkson exhausts administrative remedies and files suit.

As the parties have narrowed the issues—and since the Board does not challenge Clarkson's breach-of-contract cause, Count III—the Court must determine whether Count II's due-process claims survive the motion to dismiss and whether leave to amend, as Clarkson requests in his "counter motion," is appropriate.

## Motion to Dismiss—Count II

The Board attacks Clarkson's due process claims because Clarkson sues directly under the New Mexico and United States Constitutions.[2] By themselves, the due process protections of the Constitutions do not afford a remedy to a plaintiff in a civil action; instead, an independent legal source is necessary to allow a plaintiff to vindicate those rights through an award of monetary or injunctive relief. *See*, *e.g.*, *Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 924 (1982) (Section 1983 enforces individual citizens' rights guaranteed under the United States Constitution by providing a remedy); *Barreras v. State Corr. Dep't*, 62 P.3d 770, 776 (N.M. Ct. App. 2003) (affirmative legislation is typically needed "to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution"). Contrary to the Board's assertion, however, Clarkson's failure to cite to remedial legislation for his federal due-process claim does not require dismissal. Section 1983 is the sole remedy here, *see* 42 U.S.C. § 1983, and "[b]ecause Plaintiff does not have a cause of action directly under the Constitution, his claims are necessarily brought pursuant to Section 1983." *Link v. Adamski*, 2015 U.S. Dist. LEXIS 152287, at *11 (W.D. Pa. Oct. 14, 2015); *Schaefer v. Las Cruces Pub. Sch. Dist*., 716 F. Supp. 2d 1052, 1072 (D.N.M. 2010) (no specific citation to Section 1983 in complaint).

New Mexico lacks an analogue to Section 1983. Although the Tort Claims Act abrogates sovereign immunity in certain instances, the only remedy afforded for state constitutional violations is against law enforcement officers. *See* N.M. Stat. Ann. §§ 44-4-12 & 41-4-17(A) (1978). This case does not involve the actions of law enforcement. Without "affirmative

---

[2] The Board is correct that Clarkson does not oppose dismissal of Count without prejudice. At the same time, Clarkson argues that at least one of the Board's reasons for dismissing the federal aspect of Count II is incorrect. As explained below Clarkson's argument that Section 1983 need not be specifically mentioned to survive dismissal is correct. Because of the qualified nature of Clarkson's "non opposition," (*see* Doc. 20, at 2), the Court reaches the merits of the Board's arguments.

legislation," Clarkson's due-process claim under the New Mexico Constitution fails.  Clarkson identifies no other potential sources, the Court can discern no basis for a remedy in this context, and the NMTCA does not reach the conduct alleged.  *See Chavez-Rodriguez v. City of Santa Fe*, 2008 U.S. Dist. LEXIS 108742, at *17 (D.N.M. Oct. 17, 2008) (granting summary judgment on a due-process claim under the New Mexico Constitution).  In sum, while Count II's federal claim survives the Boards' motion to dismiss, Count II's state claim does not.

### **Counter Motion to Amend**

Clarkson seeks to amend his complaint to add additional individuals he says are responsible for violating his federal due-process rights.  Clarkson attaches a proposed complaint to his "counter motion."  At this stage in the litigation, Clarkson may amend only with leave of Court.  *See* Fed. R. Civ. P. 15.  Under Rule 15(a)(2), the Court must "freely give leave where justice so requires."  The Court, however, may deny a motion to amend if amendment would be futile, meaning the amended complaint would be subject to dismissal. *See Moya v. Garcia*, 895 F.3d 1229, 1239 (10th Cir. 2018),

Clarkson's proposed complaint alleges "Defendants Dan Howard, James Hoffman, Ralph Lucero,[3] and Nancy Oretskin deprived Dr. Clarkson of his constitutionally protected property interest in continued employment for an illegitimate and/or discriminatory purpose" and "without notice or a hearing meaningful in either fact or theory." (Doc. 20-1, ¶¶ 84-85).  The Board gives two reasons why this amendment would be futile: (a) to the extent sued in their official capacity, the individuals are protected by sovereign immunity; (b) Clarkson does not plead sufficient facts to demonstrate each individual's role in the alleged due-process violation

---

[3] In its reply, the Board attaches the affidavit of Lucero stating that Lucero was not the hearing officer in the matter. The Court does not consider the affidavit because its analysis is confined to the pleading challenged. At some point the issue may be ripe for summary judgment.

sufficient to overcome qualified immunity. The Board's reasons find some support but are insufficient to deny leave altogether.

### *Sovereign immunity*

The Eleventh Amendment ordinarily bars federal-court jurisdiction over private suits against a state and/or its employees acting *in their official capacity*. *See Muscogee (Creek) Nation v. Pruitt,* 669 F.3d 1159, 1166 (10th Cir. 2012). But "a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Id*. (citing *Ex parte Young*, 209 U.S. 123 (1908)). And Clarkson prays for injunctive relief that, arguably, is prospective. *See* Doc. 20-1, ¶¶ 92-96). Moreover, Clarkson names the individuals in *both* their official and individual capacities. Section 1983 has always permitted suits against state actors for money damages in their individual capacities. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011). Whatever deficiency exists in the naming of parties, Clarkson may easily rectify in redrafting the amended complaint.

### *Factual plausibility*

To overcome a futility argument, a proposed amended complaint must "isolate the allegedly unconstitutional acts of each defendant[.]" *Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1250 (10th Cir. 2008). Without specific allegations doing so, a complaint "does not provide adequate notice as to the nature of the claims against each defendant." *Id.* In the qualified immunity context, a plaintiff "must allege facts sufficient to show . . . that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time." The complaint needs "enough allegations" to give *each* individual defendant notice of the plaintiff's theory. *Id.* "[I]t is particularly important . . . that the complaint

make clear exactly *who* is alleged to have done what to *whom*[.] *Id.* (citation omitted) (emphasis added).

Contrary to the Board's implication, Clarkson's complaint contains factual detail as it relates to *some* individuals. For example, Clarkson alleges that Howard hired a hearing officer that directly reported to Howard to adjudicate the propriety of the proposed termination. (Doc. 20-1, ¶ 65). Additionally, Ralph Lucero, the hearing officer, refused to recuse himself in light of a conflict of interest and did not follow the correct standard in ruling against Clarkson. (*Id.* at 65-69). Assuming Clarkson had a protected property or liberty interest in continued employment, due process requires officials to employ fair procedures in terminating Clarkson. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998). Conflicts of interest and biases go directly to "[i]mpartiality of the tribunal is an essential element of due process." *Riggins v. Goodman*, 572 F.3d 1101, 1112 (10th Cir. 2009). The Court is not persuaded that Clarkson's proposed pleading lacks fair notice to at least these individuals.

The Court agrees that for other individuals, the proposed complaint is deficient. Taking Oretskin as an example, Clarkson alleges she is a state actor employed by NMSU. Clarkson claims she was one professor behind an effort to get Clarkson fired for plagiarism in January 2017. According to Clarkson, Oretskin admitted to "targeting" Clarkson for years and had "publicly denigrated" Clarkson's scholarship. Taken as true, these facts do not demonstrate that Oretskin did anything to deprive Clarkson of a protected property or liberty interest over a year later. For that reason, the Court cannot say that Oretskin violated Clarkson's clearly established right to due process of law in his termination proceedings. As above, this deficiency may easily be addressed in a carefully drafted complaint. Although certain elements of Clarkson's

complaint would not survive a motion to dismiss—and for that reason the Court will not accept the amendment for filing—the Court is not prepared to deny leave to amend altogether.

## CONCLUSION

For the reasons above, Clarkson's original complaint survives dismissal in two respects. Because the Board did not move to dismiss Count III, this claim remains viable. Additionally, Count II's due process claim under the federal Constitution is not subject to dismissal as the Board argues. In terms of Clarkson's counter motion seeking leave to amend, although the Court will not accept the amended complaint as drafted, the Court will grant leave allowing Clarkson to remedy the deficiencies.

**IT IS, THEREFORE, ORDERED** that the Board's motion to dismiss is **GRANTED in part**. Count I is **DISMISSED with prejudice**, and Counts IV and V are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that Count II's due process claim under state law is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Clarkson's "counter motion" to amend is **GRANTED in part**. Clarkson may file an amended complaint that complies with applicable pleading standards on or before **March 31, 2019**. The Board will not be precluded from seeking dismissal in the event the amended complaint is deficient.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent