# EXHIBIT 1

**DECLARATION OF DR. GAVIN CLARKSON IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING VIOLATION OF DUE PROCESS – 42 U.S.C. § 1983**

I, Dr. Gavin Clarkson, hereby state:

1. I am over the age of 18. I am personally knowledgeable about the facts contained herein, except for those stated on information and belief, which facts I believe to be true, and am competent to testify if called upon to do so.

2. I am the Plaintiff in this matter, and I make this Declaration in support of the Motion for Partial Summary Judgment Regarding Violation of Due Process – 42 U.S.C. § 1983.

3. I am an enrolled member of the Choctaw Nation, a federally recognized Indian tribe, and was an Associate Professor in the College of Business at New Mexico State University until April 27, 2018.

4. I hold a BA and MBA from Rice University, am a *cum laude* graduate of the Harvard Law School where I was President of the Native American Law Students Association and Managing Editor of the Harvard Journal of Law and Technology. I was also the first tribal member to earn a doctorate from the Harvard Business School (in Technology and Operations Management).

5. Named the nation's "leading scholar in tribal finance" by The Financial Times, I have been cited by Bloomberg, the Wall Street Journal, and USA Today on matters of tribal finance and rural economic development, subjects I have taught as a professor at the University of Michigan, University of Houston, University of Montana, as well as NMSU. Upon information and belief, as of 2018 I had sole-authored more law review articles than the entire rest of the NMSU business law faculty combined.

6. I was specifically recruited by Dr. Garrey Carruthers to the College of Business at NMSU to "do Indian stuff," including being the faculty sponsor of the Native American Business Students Association and increasing the amount of tribal finance and economic development research at NMSU.

7. In part, because of my academic credentials and nationally-recognized research expertise, I was appointed as the Deputy Assistant Secretary for Policy and Economic Development ("DASPED") in the Department of the Interior in June of 2017.

8. I had also been offered the position of Deputy Director of Indian Energy Policy and Programs in the Department of Energy, but after careful consideration, I chose the position at the Department of the Interior instead.

9. Pursuant to NMSU's Administrative Rules and Procedures ("ARP") §8-53, I requested and was granted a professional leave of absence until January, 2020 in a written letter from Provost Howard dated June 28, 2017.

10. Additionally, the written document from Provost Howard specifically granted me with a pause in my tenure clock until the Fall of 2020.

11. I also requested the option of extending the leave for an additional 12 months until January 2021. Provost Howard denied that request in the written grant of leave.

12. I also requested that, upon his return to the faculty, he be given control of the Indian Resource Development Program. Provost Howard denied that request in the written grant of leave.

13. ARP §8.53-G states "All conditions of professional leave without pay, including the status of the individual upon return to the university and (if appropriate) the effect of this period on tenure and promotion eligibility, must be in writing prior to the leave period." Nowhere in the written grant of leave from Provost Howard are any conditions specified under which my leave could be unilaterally cancelled by NMSU or Provost Howard.

14. At the time of my appointment as DASPED, I was preparing to teach an online course at NMSU, and because I didn't want to abandon my students, I requested that my leave begin after the end of the summer semester. I then requested and was granted ethics clearance by the Department of Interior to teach the course while I served as the DASPED throughout the rest of the summer semester.

15. This is not the first time NMSU has tried to fire me without "just cause." NMSU has previously attempted to discriminate against and terminate me on at least one other occasion. Approximately two weeks after I attended the presidential inauguration in January 2017, a

defamatory dossier was submitted to my supervisors alleging that I had engaged in plagiarism. Since I am the nation's leading scholar in tribal finance, however, they were unable to document any cases of actual plagiarism and instead compiled a dossier alleging "self-plagiarism."

16. The fake dossier contained passages that I periodically re-use, with proper attribution, from earlier articles. The fake dossier omitted these attributions in an attempt to persuade the Promotion & Tenure ("P&T") committee not to renew my contract.

17. Based on information obtained in a separate administrative hearing, one of the professors behind this effort, Professor Nancy Oretskin, admitted under oath that she had been involved in targeting me and my occupation for years. Based on information and belief, Ms. Oretskin was involved in either the preparation, dissemination, or discussion of that defamatory dossier at my prior P&T committee reviews. Ms. Oretskin had also publicly denigrated my scholarship regarding Indian tribes and had declared that it was a waste of time to teach anything regarding Indians to business law students in New Mexico.

18. Additionally, in or around August, 2014, during an NMSU governmental relations meeting, Defendant Dean Hoffman commented that he would prefer someone other than I run a specific Native American program because he wanted someone who "looked more like a New Mexican Indian."

19. During the time that I was serving in Washington D.C., Congressman Steve Pearce decided to run for Governor of New Mexico instead of seeking another term in Congress. After Mr. Pearce left his seat vacant, I began seriously considering leaving Interior and running for the open seat, given that one of my mentors, Garrey Carruthers, had taken a similar path.

20. In November, 2013, a false news story appeared in the Washington Post alleging that I had resigned because of a report about problems with the Indian Loan Guarantee Program during the Obama Administration.

21. On November 15, 2017, Provost Howard acknowledged receipt of the false news story, but he took no steps to contact me regarding the story or cancel my professional leave.

22. Provost Howard later testified, under oath, that as of November 15, 2017 he fully expected that I would be rejoining the faculty in January 2018. Based on information and belief,

his statement was demonstrably false. In particular, the Provost took no steps whatsoever indicating any expectation that I would be returning to the faculty anytime other than January 2020.

23. On December 14, 2017, I received email correspondence confirming that I was still on professional leave of absence.

24. On December 29, 2017, I submitted a letter of resignation to Secretary Zinke.

25. Upon information and belief, I allege that NMSU wrongly claims that the act of resigning from the Department of the Interior resulted in revocation of my leave.

26. Despite claims that my leave of absence was terminated due to my resignation, upon information and belief I allege that NMSU took no action to ensure I returned to the faculty and did so only after my announcement that I was running for Congress.

27. On January 1, 2018, I moved back to Las Cruces and started preparing for my upcoming campaign for New Mexico's 2nd Congressional District.

28. On January 4th, Finance Department head Harikumar Sankaran emailed me stating that he was assuming that I would return for the Fall 2018 semester. No mention is made of teaching in Spring 2018 or cancellation of my leave.

29. As a courtesy, I replied back to Sankaran indicating that I was running for Congress.

30. On January 5, 2018, Sankaran reminded the Provost in an email that I was on leave through at least the Fall of 2018. The Provost's written response does not contradict the statement that I remained on leave through that timeframe.

31. Also, on January 5th, 2018, I filed paperwork to enter the race as a Republican for New Mexico's 2nd Congressional District.

32. On January 8th, 2018, I formally announced my candidacy at a meeting of Dona Ana County Republicans.

33. On January 9th, 2018, the Las Cruces Sun-News ran a story about my campaign for Congress, highlighting, among other items, my membership in an Indian tribe and having been "named the nation's 'leading scholar in tribal finance' by The Financial Times [and having] been

cited by Bloomberg, the Wall Street Journal and USA TODAY on matters of tribal finance and federal Indian law." Other national publications similarly highlighted my tribal heritage.

34. On January 9th, 2018, Provost Howard and General Counsel Lizbeth Ellis initiated a conversation on how to respond.

35. On January 10th, 2018, Sankaran asked that I schedule a meeting with himself, the Associate Dean and the Dean of the College of Business to discuss the status of my leave. He mentions that several options regarding the leave will be on the table. He also sent a Doodle Poll meeting request.

36. Additionally, on January 10th, 2018, the assistant to the Provost wrote a message asking the Dean to "hold off on talking [about] options for the Clarkson leave of absence until [he had] talked with the Provost." This change in direction was allegedly based on "new information."

37. Faculty were to report to campus by January 11, 2018 in conjunction with the beginning of the next semester. The first paycheck for faculty would have been issued January 12, 2018 covering the time period between January 1, 2018 and January 15, 2018.

38. Upon information and belief, I allege that at 6:08pm on January 11th, Sankaran emailed that "I was advised the NMSU Attorney General Liz Ellis that the Provost is going to send a letter with options to Gavin. Until then we will not be meeting."

39. On Friday morning, January 12th, 2018, I voluntarily attended the Finance Department faculty meeting. I reminded everyone present that I was on leave while I was running for office. At that meeting, nobody disputed that I was on leave, and it was confirmed that I was not on the schedule to teach in the Spring of 2018.

40. Later on January 12th, at the end of the day before the Martin Luther King holiday weekend, Provost Howard sent me a letter revoking my leave and demanding that I either resign immediately or return to campus the next business day. The letter also contained a provision that my tenure evaluation would begin in the Fall of 2018.

41. I immediately attempted to call Provost Howard back, but according to his assistant, he had already left for the day, despite having sent the letter via email mere minutes earlier. I gave

the assistant my personal cell phone number and asked that the Provost call me to discuss his letter. No such call took place until the following week.

42. I did not receive a paycheck from NMSU on January 12, 2018 for the pay period between January 1, 2018 and January 15, 2018.

43. If, as NMSU claims, they were anticipating my return to campus for the Spring of 2018, then I should have received a paycheck on January 12, 2018, which did not occur.

44. On January 16th, 2018, I voluntarily attended the College of Business convocation and "checked in" with Finance Department Head Sankaran.

45. Also on January 16th, 2018, Sankaran mentioned in an email to the Provost that the General Counsel had made some disparaging remarks regarding my presence on campus, presumably because I had previously flown back to Houston to take care of my teenage son and elderly mother.

   a. No mention was made of monitoring other faculty member's presence on campus. NMSU has claimed attorney-client privilege in order to keep such relevant information from Dr. Clarkson

46. Attached to this Declaration is a true and correct copy of the audio transcript from the pre-termination hearing which was held in regard to my termination.

I declare under penalty of perjury under the laws of the state of New Mexico that the foregoing is true and correct.

   Dated this 8th day of January, 2020

   _____
   Dr. Gavin Clarkson

4822-1068-0515, v. 1