# EXHIBIT 2-A



New Mexico State University
Office of the Executive Vice President and Provost
MSC 3445
New Mexico State University
P.O. Box 30001
Las Cruces, NM 88003-8001
(575) 646-2127

## MEMORANDUM

**DATE:**      **April 24, 2018**

**TO:**         **Dr. Gavin Clarkson**  800524984

**FROM:**     **Daniel J. Howard, Executive Vice President and Provost**  *Dan Howard*

**SUBJECT:**   **Notice of Termination and Option to Request Immediate Return**

As a result of the April 20, 2018 Determination following the pre-action hearing on April 13, 2018, this memorandum serves as official Notice of Termination of your employment with New Mexico State University.  In that Determination, the hearing officer upheld the original proposal for termination.  As a result, the termination of your employment at NMSU will be effective as of Friday, April 27, 2018 at close of business, subject to the alternative set forth below.

Per the determination of the hearing officer, in lieu of the termination set forth in the Notice above, you may request the opportunity to immediately resume your regular duties as a faculty member at NMSU.  Any such request must be delivered in writing to Ralph Lucero in NMSU's HR Employee Labor Relations office no later than noon on Friday, April 27, and must indicate that you will present yourself on Monday, April 30, 2018 at 8:00 am to meet with your department head in his office and accept work assignments.  In such case, you will be expected to be available on campus during all regular business hours for the remainder of the Spring semester, and to then again return to your regular faculty position in the Fall semester as called for in the academic calendar.

Should you request to return to your regular duties in accordance with the terms set forth above, that request will be granted, and will be deemed a final and full resolution of the Proposed Termination, subject to a revocation if you fail to appear on campus and fulfill work duties as assigned.  At such time as you request the opportunity to resume your regular duties (as set out above), any further appeal of the Notice of Termination and the Final Determination from the Pre-Action Hearing will be considered moot and accordingly, will be dismissed.

**NMSU_Clarkson.00002**



*Handwritten top right:* 16-0904 *bene* JAN 19 2018 *mp 1/22/18 11:00*

*Stamp: NMSU Human Resources Service Center JAN 19 2018*

# New Mexico State University
## Human Resource Services
## Personnel Action Form (PAF)
Completed form should be submitted to MSC 3HRS or Hadley Hall, Room 17

| Section: 1 | EMPLOYEE INFORMATION |
|---|---|

Employee ID: 800524984     Employee Name (Last, First, MI): CLARKSON, Gavin

Position#: 197755   Suffix: 00   ECLS: A1   Org: 340350 - Finance

| Section: 2 | STATUS CHANGE (Do not complete Section 3) |
|---|---|

*Term of Employment*

Last Day: _____    Term Code: .       Term Reason: .

*Leave of Absence*

Leave Status: Active- Actively at Work  ☑     Leave Type: RLEAV- Return from Leave  ☑

Effective Date (Actual Start or Return Date): 01/16/2018     Expected Return Date: 01/16/2018

| Section: 3 | JOB CHANGE INFORMATION (Only complete fields to be changed) |
|---|---|

Effective Date: _____       Change Code: .

| | |
|---|---|
| Job Start Date: _____ | Differential Amount: _____ |
| Job Stop Date: _____ | Salary/Hourly Rate: _____ |
| Title: _____ | Department Org#: _____ |
| FTE: _____ | Reports to Position#: _____ |
| Default Shift: ☐Day ☐Swing ☐Graveyard | Time Sheet Org: _____ |

| Section: 4 | REASON FOR CHANGE/COMMENTS |
|---|---|

Dr. Clarkson is returning to work per notification in the Provost' memo dated January 12, 2018. Please see attachment.

| Section: 5 | REQUESTOR INFORMATION |
|---|---|

Requestor Name: Adela Castro     Email: acastro@nmsu.edu     Phone: 646-1201

| Section: 6 (Must be completed) | APPROVAL |
|---|---|

*Required for Faculty: Dept Head/Dir, VP/Dean/CC President and HR Services • Required for Staff/Students: VP/Dean/CC President and HR Services*

Dept Head/Dir (optional): ☐Authority ☑Designee    Harikumar Sankaran, Department Head    1/19/2018
       Print        Date

VP/Dean/CC President: ☑Authority ☐Designee    James Hoffman, Dean    1/19/2018
       Print        Date

HR Services    *Jacki Griffin*    1-22-18
       Print        Date

| | Internal Use Only | | | |
|---|---|---|---|---|
| *AD 1-22-18* | ___ | ___ | ___ | ___ |
| Data | Payroll | Pay Event | Adjustment | Budget |

*Need remove RLEAV 1/16/20, 12/18/19*    *emailed Sara*

Reset Form   Print Form

JAN 2 2 2018

**NMSU_Clarkson.00003**



Of ce of the Executive Vice President and Provost
MSC 3445
New Mexico State University
P.O. Box 30001
Las Cruces, NM 88003-8001
575-646-2127, fax: 575-646-6334
provost@nmsu.edu



JAN 19 2018
Service Center

## MEMORANDUM

**DATE:**      **January 12, 2018**

**TO:**        **Dr. Gavin Clarkson, Associate Professor, College of Business**

**FROM:**     **Daniel J. Howard, Executive Vice President and Provost**

*Dan Howard*

**SUBJECT:**     **Notification to Return to Work**

As you recall, on June 19, 2017, you submitted a request for a leave of absence with NMSU, as you had accepted a presidential appointment to serve as the Deputy Assistant Secretary for Policy and Economic Affairs in the Office of Indian Affairs at the U.S. Department of the Interior. Your requested period of leave for this appointment was from August 14, 2017 through January 2020 when faculty are expected to report back to campus.

On June 28, 2017 via an official memorandum, you were informed that your request for leave without pay was approved through January 2020 and that any consideration for an extension through January 2021 would require further consideration when the time was appropriate.

Since this approval, NMSU has become aware that your appointment has ended and you are no longer serving as Deputy Assistant Secretary for Policy and Economic Affairs. Therefore, this memorandum serves to officially inform you that the original agreement for leave without pay is now revoked. The original approval for leave was specific to supporting your appointment, with no agreement for leave for any other purpose.

Faculty are required to return for duty on Tuesday, January 16, 2018, a requirement that now holds for you. Presuming that you do not intend to resign, please check in with your department head on that date. If you do not intend to report as required, you are expected to notify your college administrator of your decision to voluntarily resign your position. This notification must occur no later than Tuesday, January 16, 2018 by 5:00 PM, close of business.

**NMSU_Clarkson.00005**



**Office of the Executive Vice President and Provost**
MSC 3445
New Mexico State University
P.O. Box 30001
Las Cruces, NM 88003-8001
575-646-2127, fax; 575-646-6334
provost@nmsu.edu



**Date:** June 28, 2017

**From:** Daniel J. Howard, Executive Vice President and Provost

**To:** Dr. Gavin Clarkson, Associate Professor, College of Business

**Re:** Leave of Absence without pay request

First of all, congratulations on your appointment as Deputy Assistant Secretary for Policy and Economic Affairs in the Office of Indian Affairs at the US Department of the Interior. I am delighted that you will be serving our country in this important role. It is a singular honor for you and for New Mexico State University.

You have requested extended leave of absence without pay beginning Monday, August 14, 2017 and concluding when faculty report back to campus in January of 2020. You have further requested the option, at your election, to extend that leave until faculty report in January of 2021. I approve your first request, a leave of absence without pay until January of 2020. I am also willing to consider an extension until January of 2021, but I am going to require that you make a formal request for this extension by August 30 of 2019, at which time I, or whoever is Provost at the time, will decide whether to grant the extension.

You are scheduled to apply for tenure in the fall of this year (2017). In light of your new responsibilities, I am going to immediately stop your tenure clock. It will be re-started when you re-join the faculty of NMSU. Thus, you will be expected to submit an application for tenure no later than the first fall semester following your return to the faculty.

You have also requested that you take over the management of the Indian Resource Development Program in the College of Business when you return from this leave. I see this as a different matter to be discussed with the leadership of NMSU when you return from your leave of absence without pay.

Again, congratulations on your appointment and best wishes for every success in your new role.

**Cc:** Chancellor Garrey Carruthers
Dean James Hoffman
Dr. Hari Sankaran
Human Resource Services

NMSU_Clarkson.00006



# New Mexico State University
# Human Resource Services
# Personnel Action Form (PAF)

Completed form should be submitted to MSC 3HRS or Hadley Hall, Room 17

*16-07309* *bene* *tmp* *8/30/17* *11am*

NMSU Human Resources Service Center AUG 29 2017

| Section: 1 | EMPLOYEE INFORMATION |
|---|---|

Employee ID: 800524984   Employee Name (Last, First, MI): Clarkson, Gavin

Position#: 197755  Suffix: 00  ECLS: A1  Org: 340350 - Finance

| Section: 2 | STATUS CHANGE  (Do not complete Section 3) |
|---|---|

*Term of Employment*

Last Day: _____  Term Code: _____  Term Reason: _____

*Leave of Absence*  w bens

Leave Status: LWOP- Leave Without Pay ▾   Leave Type: PROLV- Professional Leave ▾

Effective Date (Actual Start or Return Date): 08/14/2017   Expected Return Date: 01/14/2020  12/18/19

| Section: 3 | JOB CHANGE INFORMATION (Only complete fields to be changed) |
|---|---|

Effective Date: _____   Change Code: _____

Job Start Date: _____    Differential Amount: _____
Job Stop Date: _____     Salary/Hourly Rate: _____
Title: _____              Department Org#: _____
FTE: _____                Reports to Position#: _____
Default Shift:  ☐Day ☐Swing ☐Graveyard   Time Sheet Org: _____

| Section: 4 | REASON FOR CHANGE/COMMENTS |
|---|---|

Please place employee on Leave without Pay effective August 14, 2017. Employee is expected to return January 2020.

| Section: 5 | REQUESTOR INFORMATION |
|---|---|

Requestor Name: Adela Castro   Email: acastro@nmsu.edu   Phone: 646-1201

| Section: 6 (Must be completed) | APPROVAL |
|---|---|

*Required for Faculty: Dept Head/Dir, VP/Dean/CC President and HR Services* • *Required for Staff/Students: VP/Dean/CC President and HR Services*

Dept Head/Dir (optional):  ☐Authority ☑Designee   Harikumar Sankaran, Department Head
                                                  Print                                  Date

VP/Dean/CC President:  ☐Authority ☑Designee   Kathy Brook, Associate Dean   8-29-17
                                              Print                          Date

HR Services  Tony Lawer  Tony Lawor  8/29/17
            Print        Date

**Internal Use Only**

8/30/17 CA        8/30/17 CA     ACH Rev. Pay 16
Data              Payroll        Pay Event      Adjustment          Budget

Reset Form   Print Form

AUG 30 2017

For Payroll Use:
☐ NBAJOBS
☐ Default Earnings
☐ Pay Factors
☐ PEAEMPL
Retirement: on/off/Date Ext.
☐ ECLS-chk all positions
☐ PDADEDN
☐ PDABCOV/PEABARG
☐ Retro Pay-Notify Dept
Chk Ins Prem Coverage/Benefits

**NMSU_Clarkson.00007**

# Harvard Business School
## Transcript

*800524984*
*A1*

| | |
|---|---|
| *Official Record Of:* | Gavin Clarkson |
| *Program:* | Doctor of Business Administration |
| *Special Field:* | Technology and Operations Management |
| *Degree Awarded:* | June 10, 2004 |
| *Dissertation Title:* | Essays on Intellectual Asset Management |

### Winter 1999

| Course Number | Course Name | Instructors | Grade |
|---|---|---|---|
| 4214 | Basic Readings in Administration II | Ashish Nanda, Howard H. Stevenson | EX |

### Fall 1999

| Course Number | Course Name | Instructors | Grade |
|---|---|---|---|
| 4213 | Basic Readings in Administration I | Jay W. Lorsch | EX |

### Fall 2000

| Course Number | Course Name | Instructors | Grade |
|---|---|---|---|
| Stat 100 | Harvard Graduate School of Arts and Sciences: Introduction to Quantitative Methods | Clyde Schoolfield | A- |
| 4001 | Management and Markets: Administration and Human Behavior | Chiaki Moriguchi, Kathleen L. McGinn | B+ |
| 4010 | Microeconomic Theory I | Jerry R. Green | B+ |
| 4540 | The Management of Technological Innovation | Lee Fleming | B+ |

### Fall 2001

| Course Number | Course Name | Instructors | Grade |
|---|---|---|---|
| S 052 | Harvard Grad. School of Education: Applied Data Analysis | | B+ |

### Winter 2003

| Course Number | Course Name | Instructors | Grade |
|---|---|---|---|
| 4910 | Direction of Doctoral Dissertations | George P. Baker | P |

### Fall 2003

| Course Number | Course Name | Instructors | Grade |
|---|---|---|---|
| 4910 | Direction of Doctoral Dissertations | George P. Baker | P |

### Winter 2004

| Course Number | Course Name | Instructors | Grade |
|---|---|---|---|
| 4910 | Direction of Doctoral Dissertations | George P. Baker | P |

VOID VOID VOID VOID VOID VOID

VOID VOID VOID VOID

Official Transcript Verified by HRS

*SA*    10/5/2017
Initials    Date Verified

BDMS   AD   11/8/17



*Registrar's Office Signature and Seal*

April 10, 2017     Page 1 of 1

**NMSU_Clarkson.00011**



# H A R V A R D | B U S I N E S S | S C H O O L

DOCTORAL PROGRAMS

## Explanation of Grading Scales for Students in the Doctoral Programs

Beginning with academic year 2000-01, all students registered in courses and seminars offered in the Doctoral Programs are graded on the following scale:

(Do not use A+.)  Acceptable letter grades are A, A-, B+, B, B-, C+, C, C-, D+, D, D-, E.
The minimum standard for satisfactory work is a "B" average in each academic year.
E  is a failing grade.
**INC**  indicates that the faculty member has assigned an incomplete grade for any number of reasons.  The instructor has the prerogative of approving an extension of time for completion of coursework beyond the end of the term.

Students who have taken MBA courses are graded on the following scale:
**Category I:** given to the top 15-20% of students in a required curriculum section or the top 15-25% of students in an elective curriculum course section.
**Category II:** given to the next 70-75% of students in a required curriculum section or the next 65-75% in an elective curriculum course section. The actual number of Category II grades is subject to the number of Category I grades assigned.
**Category III:** given to the lowest-performing 10% of students in a required curriculum section or an elective curriculum course section.

Beginning with the academic year 1980-1981, all students registered in courses and seminars offered in the Doctoral Programs were graded on the following scale:

**Excellent (EX):**  indicates superior performance in which the student's classroom and written work has exceeded the faculty member's normal expectations.
**Satisfactory (SA):** indicates professionally creditable performance, fulfilling the faculty member's expectations.
**Low Pass (LP):** indicates performance which, although deficient in some respects, meets the minimal standards of the faculty member.
**Unsatisfactory (UN):** is assigned when the student has not performed adequately to meet the minimal standards of the faculty.
**Incomplete (INC):** indicates that the faculty member has assigned an incomplete grade for any number of reasons.

Beginning in the academic year 1971-1972 through 1979-1980, all students registered in courses and seminars offered in the Doctoral Programs were graded on the following scale:

**Outstanding (O):** distinguished performance that stands out in relation to the prevailing achievement of the D.B.A. students in general.*
**Satisfactory (S):** meets prevailing expectations for doctoral work without question; usually some aspects that are distinguished or outstanding.
**Marginal Pass (MP):** on balance, acceptable within the context of doctoral studies: shows some weakness and is not distinguished in many of its particulars.
**Unsatisfactory (U):** fails to meet the standards of doctoral work.

The grading scale used through fall semester, 1970, for students enrolled in Doctoral seminars and through the Spring semester, 1971, in MBA courses and seminars was:

| | | | |
|---|---|---|---|
| **Distinctive** | **(D)** | **Low Pass** | **(LP)** |
| **High Pass** | **(HP)** | **Unsatisfactory** | **(U)** |
| **Pass** | **(P)** | | |

Although there is no official way of equating grades at this School with those of other institutions, in general a grade of <u>Pass</u> might be considered comparable to a grade of **B** on the traditional A,B,C scale.

*It is intended that expectations be defined in relation to long-run experience with D.B.A. students, and not with reference to the current year alone.

**This education record is subject to the Family Educational Rights and Privacy Act of 1974 (Buckley Amendment), as amended.  It is furnished for official use only and may not be released to or accessed by outside agencies or third parties without the written consent of the student concerned.**

> **Please Note:** Beginning on September 1, 1995, all Harvard Business School Doctoral Program transcripts, regardless of the year of graduation, are issued on new paper. The front of the transcript has a crimson background on white.

SOLDIERS FIELD | BOSTON, MA 02163 | Ph 617.495.6106 | Fx 617.496.2203 | DoctoralPrograms@hbs.edu | GEORGE F. BAKER FOUNDATION

NMSU_Clarkson.00012

# GAVIN CLARKSON

100 Law Center • Houston, TX • 77204-6060
Phone: 832-303-0636 • Fax: 713-743-2223 • gavin.clarkson@gmail.com • http://www.gavinclarkson.com

## EDUCATION

**Harvard Business School**, Boston, Massachusetts
Doctorate in Business Administration (Technology and Operations Management)    **6/04**
    Thesis: *Essays in Intellectual Management*

**Harvard Law School**, Cambridge, Massachusetts
Juris Doctor, *cum laude*    **6/02**
    *Harvard Journal of Law and Technology* (Managing Editor); *Harvard Negotiation Law Review* (Editor);
    Olin Fellowship in Law and Economics; Native American Law Students Association (President)

**Rice University**, Houston, Texas
Master of Business Administration, Management Information Systems    **5/92**
Bachelor of Arts, Managerial Studies    **5/91**
    National Merit Scholar, President's Honor Roll, National Engineering Deans' List

## ACADEMIC POSITIONS

**University of Houston Law Center**    **9/08–present**
Associate Professor
    Courses in: Business Organizations, Intellectual Property Strategy & Management, American Indian Law

**University of Michigan**    **8/03–8/08**
Assistant Professor, School of Information (promoted to tenure track as of 9/1/06)
Visiting Professor, School of Law
Faculty Affiliate, Native American Studies
    Courses in: Intellectual Property Strategy & Management, American Indian Law

**Harvard University**

**Harvard Law School**
Reginald F. Lewis Fellow for Law Teaching    **8/02–8/03**
Teaching Fellow for Intellectual Property in Cyberspace    **1/00–5/00**

**Harvard Business School**
1665 Harvard University Native American Program Fellowship    **8/01–6/03**
John M. Olin Research Fellowship in Law, Economics, and Business    **8/01–6/03**
National President, Information Systems Doctoral Students Association    **8/99–8/01**
KPMG Fellow    **8/98–6/03**
Teaching Fellow for Building Information Age Businesses    **5/98–12/98**

**Rice University**
Lecturer, Department of Computer Science    **8/91–5/98**
    Courses in: Computer Science, Systems Analysis and Design, Information Systems

**University of St. Thomas**    **8/97–5/98**
Lecturer, Department of Management Information Systems
    Course:    Introduction to Management Information Systems

## SELECTED PUBLICATIONS & PRESENTATIONS

**Journal Publications and Conference Proceedings**

Clarkson, G., Sebenius, J., Leveraging Tribal Sovereignty for Economic Opportunity:
A Strategic Negotiations Perspective, *Missouri L. Rev.* (forthcoming 2012)

Clarkson, G., DeKorte, D., Unguarded Indians: The Complete Failure of the Post-*Oliphant* Guardian and the
Dual-Edged Nature of *Parens Patriae*, 2010 *Illinois L. Rev.* 1119 (2010)

Bagley, C. E., Clarkson, G., Power, R., Deep Links: Does Knowledge of the Law Change Managers'
Perceptions of the Role of Law and Ethics in Business? 47 *Houston L. Rev* 259 (2010)

Clarkson, G., Toh, P. K., 'Keep Out' Signs: The Role of Deterrence in the Competition for Resources,
31 *Strategic Management Journal* 1202–1225 (2010); doi: 10.1002/smj.853

Adamic, L., Wei, X., Yang, J., Gerrish, S., Nam, K., Clarkson, G., Individual focus and knowledge
contribution, *First Monday*, v15,n3 (March 2010)

Shi X., Adamic L., Tseng B., Clarkson G., The Impact of Boundary Spanning Scholarly Publications and
Patents. *PLoS ONE* 4(8): e6547. doi:10.1371/journal.pone.0006547 (2009)

**NMSU_Clarkson.00016**

Clarkson, G., Accredited Indians: Increasing the Flow of Private Equity into Indian Country as a Domestic Emerging Market, 80 *Colorado L. Rev.* 285 (2009)

Clarkson, G., Wall Street Indians: Information Asymmetry and Barriers to Tribal Capital Market Access, 12 *Lewis and Clark L. Rev.* 943 (2008)

Bhavnani, S., Clarkson, G., and Scholl, M., Collaborative Search and Sensemaking of Patents, *CHI '08 Extended Abstracts on Human Factors in Computing Systems* (Florence, Italy, April 05 - 10, 2008). CHI '08. ACM, New York, NY, 2799-2804. doi: 10.1145/1358628.1358764

E. A. Leicht, G. Clarkson, K. Shedden, and M. E. J. Newman, Large-scale Structure of Time Evolving Citation Networks, European Physics Journal B 75–83 (2007)

Clarkson, G., Jacobsen, T., Batcheller, A., Information Asymmetry and Information Sharing, 24 *Government Information Quarterly* 827-839 (2007).

Clarkson, G., Cyberinfrastructure and Patent Thickets: Challenges and Responses, *First Monday*, v12, n6, http://firstmonday.org/issues/issue12_6/clarkson/index.html (June 2007)

Clarkson, G., Capital and Finance Issues in Tribal Economic Development, *Proceedings of the National Native American Economic Policy Summit*, May 15, 2007, National Congress of American Indians

Clarkson, G., Tribal Bonds: Statutory Shackles and Regulatory Restraints on Tribal Economic Development, 85 *N.C. L. Rev.* 1009 (2007)

Clarkson, G., Van Alstyne, M. V., The Social Efficiency of Fairness: An Information Economics Approach to Innovation, *Proceedings of the 40th Annual Hawaii International Conference on System Sciences (CD-ROM)*, January 4, 2007, Computer Society Press

Bagley, C., Clarkson, G., Adverse Possession for Intellectual Property: Adapting an Ancient Concept to Resolve Conflicts Between Antitrust and Intellectual Property Laws in the Information Age, 16 *Harv J.L. & Tech.* 327 (2003)

> Selected as one of the best Intellectual Property articles of 2004 by the editorial review board of the 2004 Intellectual Property Law Review

Clarkson, G., Racial Imagery and Native Americans: A First Look at the Empirical Evidence Behind the Indian Mascot Controversy, 11 *Cardozo J. Int'l & Comp. L.* 393 (2003)

Clarkson, G., Not Because They are Brown, but Because of *Ea*: Why the Good Guys Lost in *Rice v. Cayetano*, and Why They Didn't Have to Lose, 7 *Mich J. Race & L.* 318 (2002)

Clarkson, G., Reclaiming Jurisprudential Sovereignty: A Tribal Judiciary Analysis, 50 *U. Kans. L. Rev.* 473 (2002)

Clarkson, G., Avoiding Suboptimal Behavior in Intellectual Asset Transactions: Economic and Organizational Perspectives on the Sale of Knowledge, 14 *Harv. J.L. & Tech.* 711 (2001)

> Best Paper, Foley & Lardner Intellectual Property Law Writing Competition, 2001

Clarkson, G., Recent Developments: *Rice v. Cayetano*, 24 *Harv. J. L. & Pub. Pol'y* 921 (2001)

Clarkson, G., Required Reading for the Y2K Tsunami, 13 *Harv. J.L. & Tech.* 151 (1999)

Clarkson, G., The Y2K Tsunami, 5 *B.U. J. Sci. & Tech. L.* 3 (1999)

**Supreme Court, Amicus, and Appellate Briefs**

*Amicus Curiae, Narragansett Indian Tribe v. State of Rhode Island*, 296 F. Supp. 2d 153 (2003)

Briefing clerk, *Nevada v. Hicks*, (99-1994) 533 US 353 (2001)

**Books and Book Chapters**

Chapters on Courts of Indian Offenses, The Curtis Act of 1898, and Native Hawaiians in <u>Encyclopedia of United States Indian Policy and Law</u> (Finkelman, P., and Garrison, T. A., eds., CQ Press, 2009)

Clarkson, G., DeKorte, D., The Problem of Patent Thickets in Convergent Technologies in <u>Progress in Convergence: Technologies for Human Wellbeing</u> (William S. Bainbridge, ed.), 1093 Annals of the New York Academy of Science 180-200 (2006)

Chapters on *Rice v. Cayetano*, *Morton v. Mancari*, and The Curtis Act of 1898 in <u>Treaties with American Indians: An Encyclopedia of Rights, Conflicts, and Sovereignty</u> (Donald L. Fixico, ed., ABC-CLIO, 2006)

Chapters on Intellectual Property, Tribal Finance, and Organizational Forms for Economic Development, <u>Cohen's Handbook of Federal Indian Law 2005 Edition</u> (N. J. Newton, R. Anderson, C. Goldberg, J. LaVelle, J. V. Royster, J. W. Singer, R. Strickland, eds.)

Bagley, C., Clarkson, G., Crossing the Great Divide: Using Adverse Possession to Resolve Conflicts Between the Antitrust and Intellectual Property Regimes in <u>Advances in the Study of Entrepreneurship, Innovation, and Economic Growth</u>, Volume 15: Intellectual Property and Entrepreneurship (G. Libecap, ed., JAI Press, 2004)

**NMSU_Clarkson.00017**

Chapter on Native Hawaiian Sovereignty in <u>Indigenous Peoples, the Environment and Law</u> (L. Watters, ed., Carolina Academic Press, 2004)

Contributing author for <u>Apple Software for Pennies</u>, B. Gader & M. Nodar, eds. (Warner Books, 1985)

**Congressional Testimony**

Testimony before the Senate Finance Committee on May 23, 2006, regarding discrimination against tribal governments in terms of their ability to access the capital markets relative to their state and local government counterparts.

**Harvard Business School Publications**

The Intellectual Property Exchange (A), HBS# 801-176

The Intellectual Property Exchange (B), HBS# 801-177

Intellectual Asset Valuation, HBS# 801-192

**Working and Discussion Papers**

Blunt Machetes in the Patent Thicket: 100 Years of Patent Pools and Antitrust Enforcement

Sharper Machetes for the Patent Thicket: Objective Criteria for Antitrust Evaluations of Patent Pools

Redskins and Seminoles: An Empirical Analysis of Indian Mascot Usage

Rekindling Jurisprudential Sovereignty on *Noepe*: A Case Study on the Establishment of the Aquinnah Wampanoag Judiciary, awarded 3rd Place, American Indian Law Review Writing Competition, 2002

## AWARDS AND GRANTS

IBM Faculty Award, 2009, 2008, 2007

National Science Foundation, IIS 0902426, "Tribal Finance Information Clearinghouse," 2008

National Science Foundation, IIS 0855352, "Patent Cartography: Improving the Process of Searching Through the Patent Thicket," 2008

National Science Foundation, CNS 0739183, "Learn by Doing: Encouraging Computation by Building Digital Tribal Museums," 2008

National Science Foundation, IIS 0712941, "Tribal Finance Information Clearinghouse," 2007

National Institute of Justice, 2007-WG-BX-001, "Intergovernmental Tracking System," 2007

National Science Foundation, IIS 0534905, "The Tribal Finance Information Clearinghouse," 2006

National Science Foundation, CNS 0540468, "Center for American Indian Research Opportunity in Computing" 2006

National Science Foundation, IIS 0534903, "Patent Cartography: Improving the Process of Searching Through the Patent Thicket," 2005

National Science Foundation, IIS 0618526, "Patent Informatics for Patent Thicket Detection" 2004

University of Michigan nominee, Microsoft New Faculty Fellowship, 2004

National Science Foundation, IIS 0425116, "Identification and Measurement of Patent Thickets," 2004

Grant from Compaq to develop distributed learning methodologies for higher education, 1997

Grant from Infotec to develop distributed learning methodologies for corporate education, 1997

PC Week Labs On-Site, Distance Learning Technology Shootout, 2nd Place, August 1997

DEVCON, Database Development World Championships, 3rd Place, 1993

## PROFESSIONAL MEMBERSHIPS

Academy of Management

Academy of Legal Studies in Business

American Indian Science and Engineering Society

Licensing Executives Society

## PROFESSIONAL LICENSES AND CERTIFICATIONS

Financial Industry Regulatory Authority, Series 7, 24, and 66 Licenses

State Bar of Texas

## COMMUNITY INVOLVEMENT

Chairman, American Indian Science and Engineering Society Foundation, 2005 to 2009

## PERSONAL

Enrolled member, Choctaw Nation of Oklahoma

Gold Medal, Open Rhythm, National DanceSport Championships, 1996

Silver Medal, Open Smooth, National DanceSport Championships, 1996

**NMSU_Clarkson.00018**

# Harvard Business School
## Transcript

*Official Record Of:* **Gavin Clarkson**
*Program:* **Doctor of Business Administration**
*Special Field:* **Technology and Operations Management**
*Degree Awarded:* **June 10, 2004**
*Dissertation Title:* **Essays on Intellectual Asset Management**

### Winter 1999

| Course Number | Course Name | Instructor | Grade |
|---|---|---|---|
| 4214 | Basic Readings In Administration II | Ashish Nanda, Howard H. Stevenson | EX |

### Fall 1999

| Course Number | Course Name | Instructor | Grade |
|---|---|---|---|
| 4213 | Basic Readings In Administration I | Jay W. Lorsch | EX |

### Fall 2000

| Course Number | Course Name | Instructor | Grade |
|---|---|---|---|
| Stat 100 | Harvard Graduate School of Arts and Sciences: Introduction to Quantitative Methods | Clyde Schoolfield | A- |
| 4001 | Management and Markets ab: Administration and Human Behavior (Bus 2000ab) | Kathleen L. McGinn, Chiaki Moriguchi | B+ |
| 4010 | Microeconomic Theory I (Econ 2020a) | Jerry R. Green | B+ |
| 4540 | The Management of Technological Innovation (Bus 2540) | Lee Fleming | B+ |

### Fall 2001

| Course Number | Course Name | Instructor | Grade |
|---|---|---|---|
| S 052 | Harvard Grad. School of Education: Applied Data Analysis | | B+ |

### Winter 2003

| Course Number | Course Name | Instructor | Grade |
|---|---|---|---|
| 4910 | Direction of Doctoral Dissertations (Bus 3000) | George P. Baker | P |

### Fall 2003

| Course Number | Course Name | Instructor | Grade |
|---|---|---|---|
| 4910 | Direction of Doctoral Dissertations (Bus 3000) | George P. Baker | P |

### Winter 2004

| Course Number | Course Name | Instructor | Grade |
|---|---|---|---|
| 4910 | Direction of Doctoral Dissertations (Bus 3000) | George P. Baker | P |

*Wednesday, March 05, 2008*　　　　*Page 1*　　　　*Registrar's Office Signature and Seal*

NMSU_Clarkson.00019

# Harvard Business School
## Transcript

*Official Record Of:* Gavin Clarkson
*Program:* Doctor of Business Administration
*Special Field:* Technology and Operations Management
*Degree Awarded:* June 10, 2004
*Dissertation Title:* Essays on Intellectual Asset Management

### Winter 1999

| Course Number | Course Name | Instructor | Grade |
|---|---|---|---|
| 4214 | Basic Readings In Administration II | Ashish Nanda, Howard H. Stevenson | EX |

### Fall 1999

| Course Number | Course Name | Instructor | Grade |
|---|---|---|---|
| 4213 | Basic Readings In Administration I | Jay W. Lorsch | EX |

### Fall 2000

| Course Number | Course Name | Instructor | Grade |
|---|---|---|---|
| Stat 100 | Harvard Graduate School of Arts and Sciences: Introduction to Quantitative Methods | Clyde Schoolfield | A- |
| 4001 | Management and Markets ab: Administration and Human Behavior (Bus 2000ab) | Kathleen L. McGinn, Chiaki Moriguchi | B+ |
| 4010 | Microeconomic Theory I (Econ 2020a) | Jerry R. Green | B+ |
| 4540 | The Management of Technological Innovation (Bus 2540) | Lee Fleming | B+ |

### Fall 2001

| Course Number | Course Name | Instructor | Grade |
|---|---|---|---|
| S 052 | Harvard Grad. School of Education: Applied Data Analysis | | B+ |

### Winter 2003

| Course Number | Course Name | Instructor | Grade |
|---|---|---|---|
| 4910 | Direction of Doctoral Dissertations (Bus 3000) | George P. Baker | P |

### Fall 2003

| Course Number | Course Name | Instructor | Grade |
|---|---|---|---|
| 4910 | Direction of Doctoral Dissertations (Bus 3000) | George P. Baker | P |

### Winter 2004

| Course Number | Course Name | Instructor | Grade |
|---|---|---|---|
| 4910 | Direction of Doctoral Dissertations (Bus 3000) | George P. Baker | P |

NMSU_Clarkson.00020

HARVARD LAW SCHOOL
Cambridge, Massachusetts  02138
Date of Issue: October 18, 2002

Record of: Gavin Stuart Clarkson
Entrance Status: First

Degree Received: J.D. cum laude, June 06, 2002

Stephen M. Kane, Registrar
Not valid unless signed and sealed

Issued to:

ISSUED TO STUDENT

Credit types:

A: Classroom Work  R: Re-exam
C: Clinical Work  W: Written Work
D: Directed Study  X: Cross-registration

-- indicates either grade not
reported to Registrar, or all
grades for a particular term
not yet released to students.

B.A. (Rice Univ.) 1991
M.B.A. (ibid.) 1992

## FIRST YEAR

| Course Number and Title | Mark | Cr. |
|---|---|---|
| Fall 1998: Sept. 3 – Jan. 15 | | |
| LAW-10100-A-12 Civil Procedure 2 | B+ | 5.0 |
| LAW-11100-A-12 Contracts 2a | A- | 5.0 |
| LAW-13100-A-12 Legal Reasoning and | P | 2.0 |
| Argument 2 | | |
| LAW-14100-A-11 Property 2 | B- | 5.0 |
| Spring 1999: Jan. 27 – May 28 | | |
| BUS-62900-X-31 Basic Readings in | I* | 0.0 |
| Administrative Theory | | |
| *not for degree credit | | |
| LAW-12100-A-31 Criminal Law 2 | B | 5.0 |
| LAW-15100-A-31 Torts 2 | B | 5.0 |
| LAW-82935-W-31 Opt.-Sem.-Little Bear | A+ | 1.0 |
| LAW-99110-A-31 Seminar: Tribal Legal | A+ | 2.0 |
| Practices | | |
| Total first-year credits: 30.0 | | |

## SECOND YEAR

| Course Number and Title | Mark | Cr. |
|---|---|---|
| Fall 1999: Sept. 3 – Dec. 23 | | |
| BUS-61400-X-11 4213Basic Readings | I | 2.0 |
| LAW-22000-A-12 Corporations A2 | B+ | 4.0 |
| LAW-31400-A-11 Bankruptcy Law | A- | 4.0 |
| LAW-38820-A-11 Intellectual Property | B+ | 3.0 |
| Litigation | | |
| LAW-39140-A-11 Internet and Society: | B+ | 3.0 |
| Technologies and | | |
| Politics of Control | | |
| Winter 2000: Jan. 3 – Jan. 24 | | |
| LAW-37010-A-22 Federal Indian Law | A | 3.0 |
| Spring 2000: Jan. 31 – May 26 | | |
| LAW-21000-A-31 Constitutional Law B1 | B | 5.0 |
| LAW-35260-A-31 Empirical Methods for | A- | 3.0 |
| Legal Analysis | | |
| LAW-37010-C-92 Federal Indian Law | A | 2.0 |
| LAW-38820-A-31 Intellectual Property | A- | 4.0 |
| LAW-83092-W-31 WI:Reg.Ind-Williams | A+ | 2.0 |
| Total second-year credits: 33.0 | | |

## THIRD YEAR

| Course Number and Title | Mark | Cr. |
|---|---|---|
| Spring 2001: Feb. 5 – May 31 | | |
| BUS-62200-X-31 Design of Field Research | A- | 3.0 |
| BUS-60210-X-33 Microeconomic Theory II | B+ | 3.0 |
| LAW-42300-A-35 Legal Profession: The | A- | 3.0 |
| Responsibilities of | | |
| Public Lawyers | | |
| LAW-42300-C-35 Legal Profession: The | A- | 2.0 |
| Responsibilities of | | |
| Public Lawyers | | |
| LAW-81092-N-31 Opt.Ind-Williams, R | A | 2.0 |
| LAW-98570-A-31 Seminar: The Treatment | A | 2.0 |
| of Scientific Evidence | | |
| in the Courts | | |
| Winter 2002: Jan. 3 – Jan. 25 | | |
| LAW-44100-A-21 Negotiation Workshop Ca | P | 3.0 |
| Spring 2002: Jan 28 – May 17 | | |
| FAS-60690-X-33 Multivariate Analysis in | A- | 3.0 |
| Psychology | | |
| LAW-44100-A-92 Negotiation Workshop Ca | P | 1.0 |
| LAW-44790-A-31 Negotiation Workshop | A- | 3.0 |
| Advanced: Multiparty | | |
| Negotiation | | |
| LAW-49092-C-31 Independent Clinical | A+ | 2.0 |
| Work Program: Williams | | |
| LAW-81092-N-31 Opt.Ind-Williams, Robert | A+ | 2.0 |
| LAW-81210-A-31 Seminar: Concepts of | B+ | 2.0 |
| Justice in the Bible and | | |
| Other Holy Books | | |
| Total third-year credits: 31.0 | | |

END OF TRANSCRIPT

NMSU_Clarkson.00021

**Jason Castillo**

| | |
|---|---|
| **From:** | Jason Castillo |
| **Sent:** | Thursday, August 2, 2018 12:35 PM |
| **To:** | Lizbeth Ellis |
| **Cc:** | Ralph Lucero |
| **Subject:** | Fwd: Post Action Appeal Dates |

Dr. Ellis,
Please see response from Dr. Clarkson regarding his availability to have his Post Action Hearing. Thank you.

Jason Castillo
Employee & Labor Relations
575-646-4765

Sent from my iPhone

Begin forwarded message:

> **From:** Gavin Clarkson <clarkson@nmsu.edu>
> **Date:** August 2, 2018 at 12:25:25 PM MDT
> **To:** Jason Castillo <jascasti@ad.nmsu.edu>, "Pezzillo, Brian J"
> <bpezzillo@howardandhoward.com>
> **Subject: Re: Post Action Appeal Dates**
>
> Jason,
>
> Brian Pezzillo is my new attorney.
>
> He will know on Tuesday to know what dates are available. He has a trial starting sometime in
> August but they are currently on a five week stack, meaning he could go to trial anytime during a
> five week period. He should be getting a specific date on Monday to know when they are going
> for sure.
>
> I'll have Brian reach out to you then.
>
> --
> Dr. Gavin Clarkson, Esq.
> gavin.clarkson@gmail.com
>
> On Mon, Jul 2, 2018, 10:02 AM Jason Castillo <jascasti@ad.nmsu.edu> wrote:
>
>> Good Morning Dr. Clarkson,
>>
>> I just wanted to follow up with you regarding the alternate dates you were going to provide me. Can
>> you please send me those dates at your earliest convenience. Thank you.
>>
>>
>> Jason Castillo, Associate Employee Relations Specialist

1

**NMSU_Clarkson.00125**



**HR, Employee & Labor Relations**
New Mexico State University
MSC 3HRS
PO Box 30001
Las Cruces, NM 88003-8001
Phone: (575) 646-2449
Fax: (575) 646-4556

# MEMORANDUM

**DATE:**    **May 1, 2018**

**TO:**    **Dr. Christopher Brown, Chair**
        **NMSU Faculty Senate**

**FROM:**    **Ralph Lucero, Director**
         **Employee & Labor Relations**

**SUBJECT:**    **Notice to Convene Faculty Appeals Board**

Pursuit to NMSU Administrative Rules and Processes Manual 10.50, Section N. – Post Determination Appeal, on behalf of the Provost, I am requesting your assistance in convening the Faculty Appeals Board (view attached rule, Section N.-3.)

Once the board has been convened, Employee & Labor Relations will coordinate with you for a date/time/location to hold a faculty appeal to a recent termination of a faculty member. In accordance with the post determination appeal rule, the hearing must take place within 25 days of the notice of appeal.

The role of the board is to conduct a fair and impartial hearing and provide its findings and recommendations to the designee for the Provost, Dr. Renay Scott, DACC President. The findings and recommendations are required to be submitted within 15 days from the close of the appeal hearing.

Please contact me at the soonest time possible when you have been able to convene the board so that the hearing can be scheduled.

Encl.:  NMSU ADR 10.50

**NMSU_Clarkson.00147**

**Ralph Lucero**

This emailing is being forwarded to inform you that Dr. Clarkson has initiated his intent to appeal his determination. I will be in contact with more information as ELR begins to coordinate.

RL

**Ralph Lucero**
**Director**
**HR, Employee & Labor Relations**
**New Mexico State University**
**575.646.2449**

*ATTENTION:*
*This message and all its attachments may contain information that is CONFIDENTIAL and PRIVILEGED. It is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. If you received this message in error, please notify the sender by reply e-mail and delete the message immediately.*

**From:** gavin.clarkson@gmail.com [mailto:gavin.clarkson@gmail.com] **On Behalf Of** Gavin Clarkson
**Sent:** Wednesday, April 25, 2018 5:09 PM
**To:** Ralph Lucero
**Subject:** Re: Post Determination Appeal Rights

Pursuant to our conversation and your subsequent email, this email is the formal notice of my intent to appeal under ARP 10-50-N-1.

You have indicated that you will ensure that this appeal is sent to the necessary parties: 1) the Office of the Executive Vice President and Provost, 2) Dean Hoffman, and 3) the assistant vice president of human resource services.

Please copy me on that correspondence, and thank you for your assistance.

--
Dr. Gavin Clarkson
Associate Professor
NMSU Department of Finance
College of Business, MSC 3FIN
P.O. Box 30001
Las Cruces, NM 88003-8001
(on leave from August 2017 to January 2020)

1

**NMSU_Clarkson.00148**

On Wed, Apr 25, 2018 at 9:01 AM, Ralph Lucero <ralucer@ad.nmsu.edu> wrote:

Dr. Clarkson:


Per our phone discussion this morning, NMSU Administrative Rules and Processes Manual 10.50 Section N (Post Determination Appeal) states that you must submit a written notice of your appeal within (5) days of receipt of your determination. Your written request can be sent via email to me directly as the Director of Employee Relations. It will be my responsibility to ensure that the dean of the College of Business and the Provost are provided notification of your appeal should you submit one. I will also respond to your request to acknowledge and confirm your submission.


Attached for your reference is a copy of Rule 10.50. Please feel free to call if you have any additional questions.


RL


**Ralph Lucero**

**Director**

**HR, Employee & Labor Relations**

**New Mexico State University**

**575.646.2449**

*ATTENTION:*
*This message and all its attachments may contain information that is CONFIDENTIAL and PRIVILEGED. It is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. If you received this message in error, please notify the sender by reply e-mail and delete the message immediately.*

**NMSU_Clarkson.00149**

| From: | Ralph Lucero |
| --- | --- |
| Sent: | Thursday, April 26, 2018 8:25 AM |
| To: | Gavin Clarkson |
| Cc: | Ralph Lucero |
| Subject: | RE: Post Determination Appeal Rights |

Dr. Clarkson,

This email is to confirm your intent to appeal your determination and to confirm that the Provost, Dean of College of Business and AVP of HR have all been notified. Please call if you have any questions. Someone from my office will be in contact with you to begin coordinating your post determination appeal hearing.

RL

**Ralph Lucero**
Director
HR, Employee & Labor Relations
New Mexico State University
575.646.2449

*ATTENTION:*
*This message and all its attachments may contain information that is CONFIDENTIAL and PRIVILEGED. It is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. If you received this message in error, please notify the sender by reply e-mail and delete the message immediately.*

**From:** gavin.clarkson@gmail.com [mailto:gavin.clarkson@gmail.com] **On Behalf Of** Gavin Clarkson
**Sent:** Wednesday, April 25, 2018 5:09 PM
**To:** Ralph Lucero
**Subject:** Re: Post Determination Appeal Rights

Pursuant to our conversation and your subsequent email, this email is the formal notice of my intent to appeal under ARP 10-50-N-1.

You have indicated that you will ensure that this appeal is sent to the necessary parties: 1) the Office of the Executive Vice President and Provost, 2) Dean Hoffman, and 3) the assistant vice president of human resource services.

Please copy me on that correspondence, and thank you for your assistance.

--
Dr. Gavin Clarkson
Associate Professor
NMSU Department of Finance
College of Business, MSC 3FIN
P.O. Box 30001

**NMSU_Clarkson.00150**

## Jason Castillo

**From:**         Jason Castillo
**Sent:**         Monday, April 30, 2018 10:48 AM
**To:**             'Gavin Clarkson'; 'Gavin Clarkson'
**Cc:**            Ralph Lucero
**Subject:**      Notice of Termination

Good Morning Dr. Clarkson,
Our office has processed the Electronic Personnel Action Form (EPAF) ending your employment at close of business on Friday, April 27, 2018 as stated in the April 24, 2018 memorandum from Executive Vice President and Provost, Dr. Dan Howard. Our office (ELR) will be the entity responsible for coordinating your Post Action Appeal according to NMSU ARP 10.50. If you need to collect any personal belongings that may be in your office here at NMSU, please coordinate through your department head to arrange a time/date you would like to pick up those items. If you have any questions/concerns, please do not hesitate to contact Mr. Ralph Lucero, Director of HR Employee & Labor Relations. Thank you sir.

Jason Castillo, Associate Employee Relations Specialist
NMSU Human Resource Services
Employee & Labor Relations
MSC 3HRS/P.O. Box 30001
Las Cruces, New Mexico 88003-8001
575-646-2449 FAX 575-646-4556

 Human Resource Services
All About Discovery!

Please consider the environment before printing this email
*ATTENTION: THIS MESSAGE AND ALL ITS ATTACHMENTS MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL AND PRIVILEGED. IT IS FOR THE SOLE USE OF THE INTENDED RECIPIENT(S). ANY UNAUTHORIZED REVIEW, USE, DISCLOSURE OR DISTRIBUTION IS PROHIBITED. IF YOU RECEIVED THIS MESSAGE IN ERROR, PLEASE NOTIFY THE SENDER BY REPLY E-MAIL AND DELETE THE MESSAGE IMMEDIATELY.*

**NMSU_Clarkson.00153**



**College of Arts and Sciences**
Office of the Dean
MSC 3335
New Mexico State University
P.O. Box 30001
Las Cruces, NM 88003-8001
575-646-3500

Enrico Pontelli, Ph.D.
epontell@nmsu.edu

**MEMORANDUM**

**TO:** Gavin Clarkson, Associate Professor,
Finance Department, NMSU

**FROM:** Enrico Pontelli, Dean
College of Arts & Sciences

**DATE:** April 20, 2018

**SUBJECT:** Final Determination, Pre-Action Hearing

In accordance with NMSU Administrative Rules and Processes Manual, Section 10.50 – M., this memorandum serves as official determination to the proposed termination and as a result of the pre-action hearing.

On April 13th, 2018, a pre-action hearing took place in Domenici Hall Room 252 on the New Mexico State University main campus; the hearing was requested by Dr. Gavin Clarkson on January 31st, 2018, in response to a Notice of Proposed Termination issued by Executive Vice President and Provost, Dr. Daniel Howard.

During the hearing, Dr. Howard presented his justification for the proposed termination, Dr. Clarkson had the opportunity to cross-examine and establish his counter-arguments, and the two parties cross-examined three witnesses (Dr. Liz Ellis, General Counsel; Dr. James Hoffman, Dean of the College of Business; Dr. Nancy Oretskin, Professor in the College of Business).

The evidence presented demonstrates, in the opinion of the hearing officer, concerning issues in the arguments presented by both parties.
- Dr. Clarkson:
  - The request for leave without pay submitted by Dr. Clarkson on June 19th, 2017 and the **acceptance** of the determination provided by Dr. Howard on June 28th, 2017, establish the authority of the Provost within the institution to make

**NMSU_Clarkson.00158**

decisions concerning leave requests. It would be inconsistent to grant an administrator the decision authority to *grant* a leave and not the authority to *modify* leaves.

- o ARP 8.53 indicates that professional leave without pay can be only granted "for the purpose of **undertaking some project** that will directly benefit the university and the person's professional development. These benefits must be detailed in the application." The request for leave articulates the project to be the DASPED appointment in the Department of Interior. The termination of DASPED would imply an early termination of the project that motivated the leave, and thus an early termination of the leave itself. Dr. Clarkson failed to communicate to the employer the change of circumstances.

- o Dr. Clarkson explained that he felt the underlying goals pursued as part of the DASPED effort might be better pursued as part of the congressional appointment currently sought; there are, however, two substantial differences with respect to the DASPED appointment and leave:

  - ▪ This is a *different project* – as such it should have been vetted by the institution and articulated in a new leave request by Dr. Clarkson.
  - ▪ The ability to pursue the proposed goals *would be possible only once Dr. Clarkson gains a congressional seat.* The process of seeking the congressional seat, in itself, does not meet the leave requirements of benefiting the institution. A leave request would become reasonable only at the time the congressional seat is acquired.

- o The previous point could be also viewed as an attempt to mislead the institution – the request for leave was made by Dr. Clarkson under the pretense of a 2.5 years DASPED appointment, from which Dr. Clarkson resigned after only a short period, to pursue a different set of activities. The lack of willful communication of the change of status from Dr. Clarkson to the institution is of concern.

- o The claim of retaliation based on Dr. Clarkson's political affiliation and his announcement to run for a congressional seat is inconsistent with the sequence of decisions that have been made and the timeline of events:

  - ▪ Dr. Clarkson's announcement appeared in the news on 1/9/18; the notice of request to return to faculty duties was issued by Dr. Howard only on 1/12/18, which is the day after faculty were required to report to campus (NMSU Academic Calendar Spring 2018); this notice is consistent with the observation that Dr. Clarkson did not report to campus by the prescribed deadline (as every other faculty) and does not appear to be immediately related to the announcement appeared on 1/9/18.
  - ▪ *Dr. Howard sided with Dr. Clarkson* on all previous decisions, including the approval of the leave request for a period of 2.5 years (*against the will of the department and the college*) and decisions about contract renewals.

- o It is the opinion of the hearing officer that Dr. Clarkson failed to assert how the claims concerning retaliation based on alleged self-plagiarism have relevance to the proposed notice of termination.

- New Mexico State University:

- There has been a failure of communication and supervision. Evidence of the change in the scope of the leave became evident on 11/15/2017 (not through direct communication by Dr. Clarkson, but through news stories). During the testimony, Dr. Howard indicated that he assumed that Dr. Clarkson would resume his regular duties, yet the College/Department failed to act on that until 1/9/2018. Proper communication with Dr. Clarkson should have happened at that time; a change of the Spring 2018 schedule, to enable Dr. Clarkson's return to duties in Spring 2018 (the earliest reasonable time to resume teaching duties), should have been processed by the department in November 2017.
- The communication with Dr. Clarkson has been antagonistic, especially at the Department and College levels, with limited attempts to seek mutual understanding and establish a positive protocol of communication and interaction.

## FINAL DETERMINATION

After reviewing the arguments presented during the proceedings of the pre-action hearing, the materials and evidence presented before and during the proceedings, and the testimony from Dr. Howard and Dr. Clarkson, it is my decision to **uphold the action proposed in the Notice of Termination**. As highlighted above, the motivation supporting the leave is currently not in place and there has been a failure on the part of Dr. Clarkson to inform the institution of the change of scope and request, at the appropriate time, a novel accommodation.

In light of the discussions and the concerns described, I would also request the addition, to the notice of termination, of language providing the following additional actions:

- Dr. Clarkson be allowed a final chance to request the opportunity to immediately resume his regular duties as a faculty member at NMSU in lieu of termination, within the respect of university regulations and meeting the job expectations at the departmental and college levels.
- If Dr. Clarkson requests for reinstatement is made and approved, he is given the opportunity to submit a new leave request once he obtains a congressional seat, and the request should receive impartial consideration and in accordance to NMSU policies and regulations.

## APPEAL RIGHTS

This determination may be appealed as described in the NMSU Administrative Rules and Processes Manual, Section M. (Post-Determination Appeal). Within (5) days from the receipt of this determination, a written notice of appeal shall be submitted to the Office of the Executive Vice President and Provost with a copy to HR Assistant Vice President via the Office of Employee & Labor Relations.

NMSU_Clarkson.00160

Cc:     Personnel File

Encl.:   NMSU ADR Section 10.50, Faculty Alleged Misconduct Investigation,
         Discipline, and Appeals Processes

**NMSU_Clarkson.00161**

The Washington Post

**Energy and Environment**

# Trump appointee to Bureau of Indian Affairs resigns after Interior's IG slams the loan program he oversaw

**By Juliet Eilperin**   November 14, 2017

Gavin Clarkson, a senior Bureau of Indian Affairs official appointed by Interior Secretary Ryan Zinke in June, resigned Monday after the department's inspector general issued a scathing report on the loan program he oversaw.

Clarkson, who served as deputy assistant secretary for policy and economic development, ran a program that guarantees loans for tribal businesses. When Zinke appointed Clarkson on June 11, he said in a statement that his "expertise in the areas of law, finance and economic development are a valuable asset . . . as we work together with tribes to increase economic opportunity and promote self-determination throughout Indian Country."

But before joining the Trump administration, Clarkson served as a consultant for tribes that received loans under the program, including a controversial $22.5 million loan for the Lower Brule Sioux Tribe that helped finance the purchase of a brokerage firm that eventually went under. As a result, the

NMSU_Clarkson.00181

Interior Department is now being sued over its refusal to guarantee the remaining $20 million balance on the loan.

Clarkson's dealings with the tribe were the subject of a detailed report published by Human Rights Watch in 2015, as well as numerous news reports. The inspector general's report scrutinized how the loan program was run under the Obama administration, for which Clarkson worked as a tribal economic consultant.

Arvind Ganesan, who heads Human Rights Watch's business of human rights division and wrote the group's 2015 report, said in an interview Tuesday that Clarkson's departure suggests that two independent probes of the loan program had made an impact, but it also raises questions about why he was hired in the first place.

"It appears to be a real failure of due diligence. He's being hired at a time when the BIA is being sued for millions of dollars for a deal he arranged," Ganesan said. "It's not as if a Google search wouldn't have worked."

Clarkson told Ganesan in an interview that he received "no compensation whatsoever" for his work on the loan, though New York court filings in a suit related to the deal state that Clarkson and his firm received $366,764 in fees and other payments. Asked a second time about the matter by Ganesan, Clarkson reiterated that he was not paid for his work on the tribe's behalf.

Ganesan welcomed Clarkson's resignation, saying, "The hope is this is a sign that there will be more transparency and accountability in the system, but it remains to be seen."

The inspector general's report, which was released Nov. 9, found that the BIA's division of capital investment (DCI), which falls under its Office of Indian Energy and Economic Development (IEED), "did not have adequate controls in place and managed the [loan program] with limited oversight from IEED, creating unnecessary risk for an already risky program."

NMSU_Clarkson.00182

While the probe did not specifically name Clarkson, it listed the liability incurred from the loan he worked on as one for which taxpayers could end up shouldering the burden.

"Between 2010 and 2016, DCI paid approximately $12.4 million in claims resulting from defaults, and received an additional claim for approximately $20 million, which had not been paid at the time of our review," the report states, and notes that as of Sept. 30, 2016, the program was "potentially liable" for $606 million in loan guarantees. "Should any of the borrowers default on these loans, it is ultimately taxpayers who would carry out the burden of bailing out the lenders since their obligations are guaranteed by the U.S. government."

The inspector general's report noted that, on at least two occasions, the acting DCI chief approved loan-guarantee applications over the objections of the program's credit committee without providing any written justification for the move. In one case, involving a $16 million loan guarantee for a film project, it said the chief "approved the application without formally documenting his rationale for disregarding the recommendation" of the credit panel.

Clarkson could not be reached for comment Tuesday. At the time of his appointment, which did not require Senate confirmation, he said that he would "bring new ideas and methods to Indian Affairs for tribal business and energy development. I am excited to help tribal nations and tribal entrepreneurs create the conditions under which they can build, expand and sustain their economies."

In an email, Interior press secretary Heather Swift said of his resignation, "the department cannot comment on personnel matters."

💬 **6 Comments**

NMSU_Clarkson.00183

Juliet Eilperin is The Washington Post's senior national affairs correspondent, covering how the new administration is transforming a range of U.S. policies and the federal government itself. She is the author of two books — one on sharks and another on Congress, not to be confused with each other — and has worked for The Post since 1998. 🐦 Follow @eilperin

NMSU_Clarkson.00184



**Subject:** Re: Notification to Return to Work
**Date:** Tuesday, January 16, 2018 at 4:12:24 PM Mountain Standard Time
**From:** gavin.clarkson@gmail.com on behalf of Gavin Clarkson
**To:** Provost Office
**CC:** James Hoffman, Harikumar Sankaran
**Attachments:** image003.jpg

Dear Provost Howard,

I hope you are doing well.

I received your letter late on Friday afternoon, and although your secretary was still in the office when I called, you were apparently already gone. Although I left you my personal cell phone so that you could call me over the weekend to discuss, I have yet to hear from you.

Therefore, based on the information available, my response is as follows:

1. I am not resigning and will not voluntarily resign my position
2. Your June 28, 2017, letter granting my leave did not specify that the leave was contingent on anything or subject to revocation.
3. I do not believe that you have the authority to unilaterally revoke a leave, nor do I see any citation to any statute or any provision of the ARP that indicates such, despite Liz Ellis' involvement. I have personally reviewed the ARP and have not located any such authorizing provision, although it is possible that I overlooked the relevant passage. If so, please advise as to which provision of the ARP gives you the unilateral authority to revoke a leave without notice or due process.
4. I had already voluntarily "checked in" with my department head at Friday's departmental meeting prior to receiving your letter, as there was some interest in a separate discussion of my leave status in the College of Business. I was informed that Liz Ellis directed that such a meeting not take place. Since I am on leave, I was not required to attend the departmental meeting, but chose to do so voluntarily.
5. I voluntarily "checked in" with my department head today, and I even voluntarily attended the first hour of convocation at the College of Business, but such action is not, and should not be construed in any way as, an acceptance of either of the two options that you propose or even agreeing that you have the authority to unilaterally revoke a leave.
6. Therefore, I reject your attempt to revoke my leave.

Sincerely,

--
Dr. Gavin Clarkson
Associate Professor (on leave until 2020)
NMSU Department of Finance
College of Business, MSC 3FIN
P.O. Box 30001
Las Cruces, NM  88003-8001


--
Dr. Gavin Clarkson
Associate Professor
NMSU Department of Finance
College of Business, MSC 3FIN
P.O. Box 30001

NMSU_Clarkson.00188

**Subject:** Gavin Clarkson Spring 2018 teaching schedule
**Date:** Friday, January 19, 2018 at 10:48:39 AM Mountain Standard Time
**From:** James Hoffman
**To:** Daniel Howard, Lizbeth Ellis
**CC:** Harikumar Sankaran, Kathy Brook
**Attachments:** image001.png

Dan & Liz,

Below are the courses that Gavin Clarkson is being assigned to teach during the second Spring Mini-Semester and the email that Hari sent to Gavin informing him of his teaching schedule. I spoke with Gavin this morning on the telephone and he stated that the issue of whether or not he is still on leave is still not resolved and that the Provost instructed him to work with me to see which courses the college needs covered (this is my recollection of what he said). Gavin's impression is that he may be allowed to teach courses for the College of Business but still be on official leave. I told Gavin that this is not what the Provost indicated to me.

Hari and I are scheduled to meet with Gavin at 9:30 AM this coming Tuesday. It would be great if one or both of you could be at the meeting so there is no miscommunication about what Gavin has been told. Let me know if you can attend. The meeting will be in my office.

Thanks,

Jim

---

**From:** Harikumar Sankaran
**Sent:** Friday, January 19, 2018 10:34 AM
**To:** Gavin Clarkson
**Cc:** James Hoffman; Harikumar Sankaran; Adela Galindo Castro
**Subject:** Spring 2018 teaching schedule

Dear Gavin,

Based on my conversation with Dean Hoffman, I am scheduling you for the following 3 Mini-Semester (2) courses in Spring 2018:

BLAW 313: Sports and the Law      MW   1 pm to 3.30 pm
BLAW 316: Legal Environment of Business    MW   4 pm to 6.30 pm
BLAW 385V: Consumers and the Law      TR    4 pm to 6.30 pm

The Mini-Semester (2) starts on March 12, 2018, and ends on May 11, 2018. Please visit the following university webpage for more details: https://registrar.nmsu.edu/important-dates-students/

Please verify before our scheduled meeting on January 23, 2018, at 9.30am with Dean Hoffman, whether you plan on teaching the abovementioned courses during the dates and times scheduled.

NMSU_Clarkson.00191

Thanks,

Hari

Harikumar Sankaran Ph.D
Professor and Department Head, Finance
MSC 3FIN
College of Business
New Mexico State University
Las Cruces, New Mexico 88003
Ph: 575-646-3201
Fax: 575646-2820


New Mexico State University
**College of Business**
Discovery is our business!

NMSU_Clarkson.00192

**Subject:** Follow-up to this morning
**Date:** Tuesday, January 23, 2018 at 10:13:21 AM Mountain Standard Time
**From:** gavin.clarkson@gmail.com on behalf of Gavin Clarkson
**To:** James Hoffman
**CC:** Harikumar Sankaran, Lizbeth Ellis, Provost Office

As I mentioned, in the ARP manual, https://arp.nmsu.edu/8-53/, part G clearly states that

"**All** conditions of professional leave without pay, including the status of the individual upon return to the university and (if appropriate) the effect of this period on tenure and promotion eligibility, must be in writing prior to the leave period."

As such, there is no authority for the provost to cancel my leave unilaterally.

Furthermore, your statement this morning that you have now processed a PAF for me to get paid is neither timely, nor relevant, as I remain on leave without pay, nor does that effort relieve the university of its liability under the FLSA and the corresponding regulations from the Department of Labor.

Finally, given the temper tantrum that you threw when I brought other individuals into a meeting with you unannounced when you first became dean, I would have at least expected some notice that the provost and general counsel were going to join the attempted ambush this morning.

I would caution everyone to act appropriately and preserve all documentation that would be discoverable in subsequent litigation.

If you have any questions, please direct them to my attorney, Kelly O'Connell. His number is (575) 496-6359.

--

Dr. Gavin Clarkson
Associate Professor (on leave until January 2020)
NMSU Department of Finance
College of Business, MSC 3FIN
P.O. Box 30001
Las Cruces, NM 88003-8001

NMSU_Clarkson.00194

**Subject:** Re: Follow-up to this morning
**Date:** Tuesday, January 23, 2018 at 1:29:39 PM Mountain Standard Time
**From:** gavin.clarkson@gmail.com on behalf of Gavin Clarkson
**To:** James Hoffman
**CC:** Harikumar Sankaran, Lizbeth Ellis, Provost Office

And, as I have told both you and the provost, I am willing to consider teaching classes while still on leave, given the provost's assertion that he is only taking this *ultra vires* step because I am allegedly needed back on campus to teach, but that arrangement will have to be negotiated.

--
Dr. Gavin Clarkson, Esq.
gavin.clarkson@gmail.com

On Jan 23, 2018 10:13 AM, "Gavin Clarkson" <clarkson@nmsu.edu> wrote:
As I mentioned, in the ARP manual, https://arp.nmsu.edu/8-53/, part G clearly states that

"*All* conditions of professional leave without pay, including the status of the individual upon return to the university and (if appropriate) the effect of this period on tenure and promotion eligibility, must be in writing prior to the leave period."

As such, there is no authority for the provost to cancel my leave unilaterally.

Furthermore, your statement this morning that you have now processed a PAF for me to get paid is neither timely, nor relevant, as I remain on leave without pay, nor does that effort relieve the university of its liability under the FLSA and the corresponding regulations from the Department of Labor.

Finally, given the temper tantrum that you threw when I brought other individuals into a meeting with you unannounced when you first became dean, I would have at least expected some notice that the provost and general counsel were going to join the attempted ambush this morning.

I would caution everyone to act appropriately and preserve all documentation that would be discoverable in subsequent litigation.

If you have any questions, please direct them to my attorney, Kelly O'Connell. His number is (575) 496-6359.

--
Dr. Gavin Clarkson
Associate Professor (on leave until January 2020)
NMSU Department of Finance
College of Business, MSC 3FIN
P.O. Box 30001
Las Cruces, NM 88003-8001

NMSU_Clarkson.00195

**Subject:** Re: Follow-up to this morning
**Date:** Tuesday, January 23, 2018 at 1:35:06 PM Mountain Standard Time
**From:** Provost Office
**To:** Dr. Gavin Clarkson, James Hoffman
**CC:** Harikumar Sankaran, Lizbeth Ellis

Dear Gavin,

As I noted to you in our phone call, we need you on campus. I did not say it was the only reason I was revoking your leave of absence. I pointed out that the condition for which you were granted leave was no longer in effect and therefore the leave needed to end.

Best,

Dan

**From:** <gavin.clarkson@gmail.com> on behalf of Gavin Clarkson <clarkson@nmsu.edu>
**Date:** Tuesday, January 23, 2018 at 1:29 PM
**To:** James Hoffman <jhoffman@ad.nmsu.edu>
**Cc:** Harikumar Sankaran <sankaran@nmsu.edu>, Lizbeth Ellis <lellis@ad.nmsu.edu>, Provost Office <provost@nmsu.edu>
**Subject:** Re: Follow-up to this morning

And, as I have told both you and the provost, I am willing to consider teaching classes while still on leave, given the provost's assertion that he is only taking this *ultra vires* step because I am allegedly needed back on campus to teach, but that arrangement will have to be negotiated.

--
Dr. Gavin Clarkson, Esq.
gavin.clarkson@gmail.com

On Jan 23, 2018 10:13 AM, "Gavin Clarkson" <clarkson@nmsu.edu> wrote:

As I mentioned, in the ARP manual, https://arp.nmsu.edu/8-53/, part G clearly states that

"*All* conditions of professional leave without pay, including the status of the individual upon return to the university and (if appropriate) the effect of this period on tenure and promotion eligibility, must be in writing prior to the leave period."

As such, there is no authority for the provost to cancel my leave unilaterally.

Furthermore, your statement this morning that you have now processed a PAF for me to get paid is neither timely, nor relevant, as I remain on leave without pay, nor does that effort relieve the university of its liability under the FLSA and the corresponding regulations from the Department of Labor.

Finally, given the temper tantrum that you threw when I brought other individuals into a meeting with you unannounced when you first became dean, I would have at least expected some notice that the provost and general counsel were going to join the attempted ambush this morning.

NMSU_Clarkson.00205

I would caution everyone to act appropriately and preserve all documentation that would be discoverable in subsequent litigation.

If you have any questions, please direct them to my attorney, Kelly O'Connell. His number is (575) 496-6359.

--

Dr. Gavin Clarkson
Associate Professor (on leave until January 2020)
NMSU Department of Finance
College of Business, MSC 3FIN
P.O. Box 30001
Las Cruces, NM 88003-8001

NMSU_Clarkson.00206

**Subject:** Re: Follow-up to this morning
**Date:** Tuesday, January 23, 2018 at 2:13:49 PM Mountain Standard Time
**From:** gavin.clarkson@gmail.com on behalf of Gavin Clarkson
**To:** Provost Office
**CC:** James Hoffman, Harikumar Sankaran, Lizbeth Ellis

The only supposed "need" you identified as justification was a "need" for me to teach, and as I told you, I am willing to teach while on leave, but that needs to be negotiated. And once again, you have yet to cite a provision of the ARP that gives you the authority to unilaterally cancel my leave without the condition being explicitly in writing pursuant to ARP 8.53. My rejection of your *ultra vires* action still stands.


--
Dr. Gavin Clarkson
Associate Professor
NMSU Department of Finance
College of Business, MSC 3FIN
P.O. Box 30001
Las Cruces, NM  88003-8001
(on leave from August 2017 to January 2020)

On Tue, Jan 23, 2018 at 1:35 PM, Provost Office <provost@nmsu.edu> wrote:

> Dear Gavin,
>
>
> As I noted to you in our phone call, we need you on campus. I did not say it was the only reason I was revoking your leave of absence. I pointed out that the condition for which you were granted leave was no longer in effect and therefore the leave needed to end.
>
>
> Best,
>
>
> Dan
>
>
> **From:** <gavin.clarkson@gmail.com> on behalf of Gavin Clarkson <clarkson@nmsu.edu>
> **Date:** Tuesday, January 23, 2018 at 1:29 PM
> **To:** James Hoffman <jhoffman@ad.nmsu.edu>
> **Cc:** Harikumar Sankaran <sankaran@nmsu.edu>, Lizbeth Ellis <lellis@ad.nmsu.edu>, Provost Office <provost@nmsu.edu>
> **Subject:** Re: Follow-up to this morning
>
>
> And, as I have told both you and the provost, I am willing to consider teaching classes while still on leave, given the

NMSU_Clarkson.00207

provost's assertion that he is only taking this *ultra vires* step because I am allegedly needed back on campus to teach, but that arrangement will have to be negotiated.

--
Dr. Gavin Clarkson, Esq.
gavin.clarkson@gmail.com

On Jan 23, 2018 10:13 AM, "Gavin Clarkson" <clarkson@nmsu.edu> wrote:

As I mentioned, in the ARP manual, https://arp.nmsu.edu/8-53/, part G clearly states that

"*All* conditions of professional leave without pay, including the status of the individual upon return to the university and (if appropriate) the effect of this period on tenure and promotion eligibility, must be in writing prior to the leave period."

As such, there is no authority for the provost to cancel my leave unilaterally.

Furthermore, your statement this morning that you have now processed a PAF for me to get paid is neither timely, nor relevant, as I remain on leave without pay, nor does that effort relieve the university of its liability under the FLSA and the corresponding regulations from the Department of Labor.

Finally, given the temper tantrum that you threw when I brought other individuals into a meeting with you unannounced when you first became dean, I would have at least expected some notice that the provost and general counsel were going to join the attempted ambush this morning.

I would caution everyone to act appropriately and preserve all documentation that would be discoverable in subsequent litigation.

If you have any questions, please direct them to my attorney, Kelly O'Connell. His number is (575) 496-6359.

--

Dr. Gavin Clarkson

Associate Professor (on leave until January 2020)

NMSU Department of Finance

College of Business, MSC 3FIN

NMSU_Clarkson.00208

P.O. Box 30001

Las Cruces, NM  88003-8001

NMSU_Clarkson.00209



Delivered to Recipient Via:
Email – addresses indicated below
Certified Mail to Home Address
Regular Mail to Home Address

(14)

## MEMORANDUM

DATE:     January 24, 2018

TO:       Dr. Gavin Clarkson, Associate Professor, College of Business
          clarkson@nmsu.edu and gavin.clarkson@gmail.com

FROM:     Daniel J. Howard, Executive Vice President and Provost   *Dan Howard*

SUBJECT:  Notice of Proposed Termination

This memorandum constitutes official Notice of Proposed Termination of employment with New Mexico State University, provided in accordance with NMSU Administrative Rules & Procedures (ARP) 10.50 (Faculty Alleged Misconduct, Investigation, Discipline, and Appeals Process).

The just cause for your proposed termination is your refusal to return to duty following revocation of a previously approved leave without pay. You were provided notification of that revocation and were directed to return to work or resign your position through my Memorandum dated January 12, 2018. As indicated in your email of January 16, 2018, and in your additional emails following your refusal to discuss this matter at a meeting on January 23, 2017, you refused to return to work as directed which constitutes job abandonment and insubordination.

The application for leave without pay (dated June 19, 2017) sought leave for the express purpose of serving in a presidential appointment. In that application, you made representations that this activity would satisfy the ARP 8.53 requirement of "undertaking some project that will directly benefit the university and the person's professional development." Based upon this specific justification, I approved the request as indicated in my memorandum dated June 28, 2017. We subsequently learned that you resigned the presidential appointment and are no longer engaged in the undertaking upon which your leave approval was premised. Accordingly, by memorandum dated January 12, 2018, you were notified by me that your leave without pay was revoked and that you were required to either return to work effective January 16, 2017, or voluntarily resign your position. Your refusal to comply with this directive is the basis for this Notice of Proposed Termination.

Given that the relevant facts are those contained in the documents referenced above, and our respective statements about our conversations, no further investigation is needed at this time. If, however, in your defense you raise issues that warrant an investigation, NMSU's HR Department will name an investigative administrator and an investigation will be conducted in accordance with ARP 10.50 H.

## DUE PROCESS & PRE-DETERMINATION HEARING

As described in the NMSU ARP 10.50, due process requires fair and timely hearing processes, before an impartial hearing official or body. The faculty member charged with misconduct and/or facing serious disciplinary action is entitled to a pre-determination hearing, at which the relevant facts are presented by the parties and determined by a hearing officer to be accurate prior to proceeding with the proposed corrective action. This ensures that the faculty member has had an adequate opportunity to present a defense to the claims and the evidence; it also ensures that the decision makers have an accurate understanding of the facts underlying the recommendation.

### Right to Attend Pre-Determination Hearing

NMSU ARP 10.50 Section M. states that a pre-determination hearing will be convened by the dean or Dean's Advisory Committee, as appropriate, in order to review the recommended action together with the evidence, and to hear the faculty member's position in response thereto. In this case, since Dean Hoffman has been involved in this matter and may be a witness, the Assistant VP for HR, Dr. Gena Jones, will be appointing another Dean to serve in this role. NMSU's HR Employee & Labor Relations unit will notify you of that appointment.

Within five (5) days of the documented receipt of this written notice of proposed termination, you are to notify HR Employee & Labor Relations in writing as to whether or not you will attend the hearing and/or be represented by legal counsel. You must also indicate whether or not the use of the Dean's Advisory Committee is requested. If you choose not to attend the informal fact finding hearing, a determination will be rendered in your absence. You are encouraged to review ARP 10.50 (enclosed) for additional details regarding the Pre-Determination procedures.

A final determination will be completed in writing and provided to you, through the Office of HR Employee & Labor Relations, in 25 days or less from the date of the issuance of this notice, unless a time extension is required and granted.

If you have any questions regarding this process, please contact the NMSU HR Employee & Labor Relations, Director at (575) 646-2449 or via email at elr@nmsu.edu.

Encl:  NMSU Administrative Rules and Procedures 10.50
       Gavin Clarkson Application for Leave without Pay dated June 19, 2017
       Dan Howard memorandum approving leave dated June 28, 2017
       Dan Howard memorandum revoking leave dated January 12, 2018
       Gavin Clarkson email refusing revocation dated January 16, 2018

NMSU_Clarkson.00212

## DUE PROCESS & PRE-DETERMINATION HEARING

As described in the NMSU ARP 10.50, due process requires fair and timely hearing processes, before an impartial hearing official or body. The faculty member charged with misconduct and/or facing serious disciplinary action is entitled to a pre-determination hearing, at which the relevant facts are presented by the parties and determined by a hearing officer to be accurate prior to proceeding with the proposed corrective action. This ensures that the faculty member has had an adequate opportunity to present a defense to the claims and the evidence; it also ensures that the decision makers have an accurate understanding of the facts underlying the recommendation.

### Right to Attend Pre-Determination Hearing

NMSU ARP 10.50 Section M. states that a pre-determination hearing will be convened by the dean or Dean's Advisory Committee, as appropriate, in order to review the recommended action together with the evidence, and to hear the faculty member's position in response thereto. In this case, since Dean Hoffman has been involved in this matter and may be a witness, the Assistant VP for HR, Dr. Gena Jones, will be appointing another Dean to serve in this role. NMSU's HR Employee & Labor Relations unit will notify you of that appointment.

Within five (5) days of the documented receipt of this written notice of proposed termination, you are to notify HR Employee & Labor Relations in writing as to whether or not you will attend the hearing and/or be represented by legal counsel. You must also indicate whether or not the use of the Dean's Advisory Committee is requested. If you choose not to attend the informal fact finding hearing, a determination will be rendered in your absence. You are encouraged to review ARP 10.50 (enclosed) for additional details regarding the Pre-Determination procedures.

A final determination will be completed in writing and provided to you, through the Office of HR Employee & Labor Relations, in 25 days or less from the date of the issuance of this notice, unless a time extension is required and granted.

If you have any questions regarding this process, please contact the NMSU HR Employee & Labor Relations, Director at (575) 646-2449 or via email at elr@nmsu.edu.

Encl:   NMSU Administrative Rules and Procedures 10.50
        Gavin Clarkson Application for Leave without Pay dated June 19, 2017
        Dan Howard memorandum approving leave dated June 28, 2017
        Dan Howard memorandum revoking leave dated January 12, 2018
        Gavin Clarkson email refusing revocation dated January 16, 2018

NMSU_Clarkson.00214

ex Clarkson A.

 New Mexico State University
All About Discovery!

# 8.53 – LOA – Professional Leave (Without Pay)

arp.nmsu.edu/8-53/

## A. Eligibility

After 3 years of service and with the approval of appropriate department head and administrators, any regular full-time exempt staff member or any faculty member of regular appointment with rank of instructor or above may submit an application for professional leave without pay, normally not to exceed 1 year, for the purpose of undertaking some project that will directly benefit the university and the person's professional development. These benefits must be detailed in the application.

## B. Use of Accrued Annual Leave

If the leave without pay is approved, all annual leave should be used before the professional leave without pay begins.

## C. Non-Accrual of Leave During Period of Professional Leave Without Pay

Annual and sick leave do not accrue during professional leave without pay.

## D. Professional Leave Absence is Unpaid

All days, including legal holidays, in the period between the date the professional leave commences and the date the employee returns to work are taken without pay.

NMSU_Clarkson.00215

# E. Insurance Premiums Contribution by NMSU

The university will contribute the employer's portion of insurance premiums during the leave period.

# F. Performance Evaluation

In cases where the individual enters a contract with a state or federal agency, such agreements must provide for a calendar-year evaluation to be prepared by the appropriate supervisor in that agency and forwarded to the appropriate department head or supervisor.

# G. Effect on Tenure Process

Periods of professional leave without pay normally will not apply toward the probationary period for tenure. All conditions of professional leave without pay, including the status of the individual upon return to the university and (if appropriate) the effect of this period on tenure and promotion eligibility, must be in writing prior to the leave period.

# Details

**Scope:** NMSU System
**Source:** ARP Chapter 8 | HR-Benefits

**Rule Administrator:** AVP Human Resource Services

**Last Updated:** 06/16/2017

# Related

**Cross-Reference:**
**Revision History:**

[Re-numbered in the June 2017 ARP Recompilation (formerly Rule 7.20.60)]

© 2017 New Mexico State University - Board of Regents

NMSU_Clarkson.00216

**Hearing Date:** Friday, April 13, 2018
**Time:** 8:30 AM to 12:30 PM
**Location:** Domenici Hall, Room 252

**Facilitator Hearing:** Teresa Burgin (Director, HR Center for Learning & Prof. Dev.)
**Hearing Officer:** Dr. Enrico Pontelli (Dean, College of Arts and Sciences)

**Employee:** Dr. Gavin Clarkson (Professor)
**Administrator:** Dr. Dan Howard (Executive Vice President & Provost)

**Legal Counsel:** Lisa Warren (Associate General Counsel, NMSU)
Kelly O'Connell (Counsel for Dr. Clarkson)

**Witnesses:** (requested by Dr. Clarkson)
1. Dr. Elizabeth Ellis, NMSU General Counsel
2. Dr. James Hoffman, Dean, College of Business
3. Dr. Nancy Oretskin, Professor, College of Business

**Hearing Recorder:** Jason Castillo, Associate Employee Relations Specialist

Introductory Remarks/Opening Hearing – Conducted by T. Burgin

*Began recording.*

For the record, today is Friday April 13, 2018 and the time is $8:57$ AM. We are assembled in Domenici Hall, Room 252 on NMSU Main Campus for a pre-action hearing for Dr. Gavin Clarkson, Associate Professor for the NMSU College of Business. This hearing was requested by Dr. Clarkson in writing on January 31, 2018 to Employee Relations Director, Ralph Lucero, disputing the authority of the Provost and appealing the Notice of Proposed Termination, issued on January 24, 2018.

For the record, this hearing is being digitally recorded. Copies of this hearing can be made available upon request at the conclusion of the hearing, by either party, including the hearing officer.

Dr. Enrico Pontelli, Dean of the College of Arts & Sciences, has been designated to serve as the hearing officer. The role of Dr. Pontelli as Hearing Officer is to hear testimony from both Provost Howard as the administering authority, and Dr. Clarkson's dispute of the proposed action, and render a final determination whether the action shall be upheld, modified or rejected. At any time during this hearing, Dr. Pontelli will have the opportunity to ask for clarification of testimony or ask questions of either party.

At this time, I'd like to ask f    each person present in this hearing to    e their name and title for the record.

## CASE BACKGROUND: (read for the record by Dr. Pontelli)

Dr. Clarkson was issued a notice of proposed termination for the following just cause:

- o Refusal to return to duty following the revocation of previously approved Leave without Pay.

I have been provided with a copy of the proposed termination notice and was provided all related documents related to this matter. Any additional evidence introduced in today's hearing for review and determination of this appeal will be placed into record.

## PURPOSE OF HEARING: (read by Dr. Pontelli)

The purpose of today's hearing is to allow both Provost Howard to present evidence of just cause for the proposed termination and Dr. Clark be afforded due process to contest the proposed action.

**NOTE:** The burden of proof is on the supervisor proposing the action in question and standard of evidence is "clear and convincing".

## Outline for Hearing Facilitator reference (T. Burgin)

1. Opening statements (5 minutes each):
   - o Provost Howard
   - o Dr. Clarkson
2. Provost Howard – outline justification for proposed action
   - o Dr Clarkson – cross examination
3. Dr. Clarkson will then outline his rebuttal to the proposed termination, and introduce evidence/facts in support of his position.
   - o Provost Howard – cross examination
4. Introduction of Witness(s) or Witness Statements.
   - o Dr. Clarkson – cross examination
   - o Provost Howard – cross examination
5. Closing statements (5 minutes):
   - o Provost Howard
   - o Dr. Clarkson

*Cross examination is limited to questions, not commentary.

NMSU_Clarkson.00236

*-Begin Hearing-*

### Closing Remarks/Adjournment – read by Dr. Pontelli

As the hearing officer, I am tasked with considering the facts of the case and any testimony and/or evidence provided at this hearing and render a written determination that will be delivered to HR Employee & Labor Relations within 10 days of this hearing. Copies will be provided to Dr. Clarkson and Provost Howard.

Appeal rights will be included in the determination of this hearing.

CLOSING: T. Burgin

The time is now _____ *11:57* _____ and this hearing is adjourned.

## Ralph Lucero

*From the desk of Liz Ellis, NMSU General Counsel*
*lellis@nmsu.edu   575-646-2446*

**From:** gavin.clarkson@gmail.com [mailto:gavin.clarkson@gmail.com] **On Behalf Of** Gavin Clarkson
**Sent:** Wednesday, January 31, 2018 4:36 PM
**To:** Ralph Lucero
**Cc:** Kelly O'Connell
**Subject:** Re: Notice of Proposed Termation

Dear Mr. Lucero,

I have received your letter via email, and with respect, I dispute the allegations made and wish to contest them. I am also disputing the Provost's authority under NMSU ARP §8-53 to unilaterally terminate my leave.

I am therefore formally requesting a pre-action hearing.

I am not requesting a Deans Advisory Committee to accompany the chosen dean.

Please provide all notes, phone records, emails, and any other records related to the decision to cancel my leave as well as any university email or written correspondence of any form that mentions and/or references me since me November 1, 2017

As I mentioned to the Provost and General Counsel, I have retained Kelly O'Connell as counsel. He is copied on this email.

Sincerely,

--

Dr. Gavin Clarkson
Associate Professor
NMSU Department of Finance
College of Business, MSC 3FIN
P.O. Box 30001
Las Cruces, NM  88003-8001
(on leave from August 2017 to January 2020)

1

**NMSU_Clarkson.00250**

On Thu, Jan 25, 2018 at 4:56 PM, Ralph Lucero <ralucer@ad.nmsu.edu> wrote:

Dr. Clarkson:

Please find attached a notice authorized by the Provost, proposing termination of your employment. Along with official notification, is NMSU Admin Rule and Procedure 10.50 for your reference regarding pre-determination appeal process. An official copy will also be sent to you address on file via certified mail.

If you have any questions, please give me a call.

**Ralph Lucero**

Director

HR, Employee & Labor Relations

New Mexico State University

575.646.2449

*ATTENTION:*
*This message and all its attachments may contain information that is CONFIDENTIAL and PRIVILEGED. It is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. If you received this message in error, please notify the sender by reply e-mail and delete the message immediately.*

2

**NMSU_Clarkson.00251**

## Ralph Lucero

Dr. Clarkson.

I am in receipt of your request for a pre-action hearing. I will begin coordination and the collecting of the records you requested.

RL

**Ralph Lucero**
**Director**
**HR, Employee & Labor Relations**
**New Mexico State University**
**575.646.2449**

*ATTENTION:*
*This message and all its attachments may contain information that is CONFIDENTIAL and PRIVILEGED. It is for the sole use of the intended recipient(s). Any unauthorized review, use, disclosure or distribution is prohibited. If you received this message in error, please notify the sender by reply e-mail and delete the message immediately.*

**From:** gavin.clarkson@gmail.com [mailto:gavin.clarkson@gmail.com] **On Behalf Of** Gavin Clarkson
**Sent:** Wednesday, January 31, 2018 4:36 PM
**To:** Ralph Lucero
**Cc:** Kelly O'Connell
**Subject:** Re: Notice of Proposed Termation

Dear Mr. Lucero,

I have received your letter via email, and with respect, I dispute the allegations made and wish to contest them. I am also disputing the Provost's authority under NMSU ARP §8-53 to unilaterally terminate my leave.

I am therefore formally requesting a pre-action hearing.

I am not requesting a Deans Advisory Committee to accompany the chosen dean.

Please provide all notes, phone records, emails, and any other records related to the decision to cancel my leave as well as any university email or written correspondence of any form that mentions and/or references me since me November 1, 2017

As I mentioned to the Provost and General Counsel, I have retained Kelly O'Connell as counsel. He is copied on this email.

Sincerely,

1

**NMSU_Clarkson.00252**

| | |
|---|---|
| ⁊rom: | Gavin Clarkson <clarkson@nmsu.edu> |
| **Sent:** | Monday, April 02, 2018 2:26 PM |
| **To:** | Enrico Pontelli |
| **Cc:** | Kelly O'Connell; Lisa Warren; Daniel Howard; Gena Jones; Nancy Oretskin; James Hoffman; Lizbeth Ellis; Kimberly Altamirano; Jason Castillo; Patricia Leyba |
| **Subject:** | Re: Hearing Date and Time |

I respectfully disagree.

Witness statements are part of the process, and there is nothing anywhere in the regulations that precludes me from interviewing witnesses prior to the hearing. If my legal team's reading of the relevant regulations is incorrect, please direct us to the appropriate regulation.

--
Dr. Gavin Clarkson, Esq.
gavin.clarkson@gmail.com

On Mon, Apr 2, 2018, 1:59 PM Enrico Pontelli <epontell@ad.nmsu.edu> wrote:

Dr. Clarkson,

As stated to you previously, in an email sent to you on March 8, 2018 from Gena Jones, Assistant Vice President, HRS, your request to have an investigator interview the witnesses is not within the scope of the informal fact finding pre-determination hearing process. The hearing is intended to elicit the relevant facts in order for the hearing officer to make an informed decision on the matter at hand. The witnesses you have requested have been asked to be available for questioning during the hearing on April 13th. During the hearing process, It will be permissible for the other party and for the hearing officer to also ask questions of the witnesses.


Enrico Pontelli



**From:** Gavin Clarkson <clarkson@nmsu.edu>
**Date:** Monday, April 2, 2018 at 1:20 PM
**To:** Enrico Pontelli <epontell@ad.nmsu.edu>, Kelly O'Connell <hibernian1@gmail.com>
**Cc:** Lisa Warren <lisawesq@ad.nmsu.edu>, Daniel Howard <dahoward@nmsu.edu>, Gena Jones <genaj@ad.nmsu.edu>, Nancy Oretskin <noretski@nmsu.edu>, James Hoffman <jhoffman@nmsu.edu>, Lizbeth Ellis <lellis@ad.nmsu.edu>, Kimberly Altamirano <kaltamir@ad.nmsu.edu>, Jason Castillo <jascasti@ad.nmsu.edu>, Patricia Leyba <pleyba@ad.nmsu.edu>
**Subject:** Re: Hearing Date and Time

1

**NMSU_Clarkson.00254**

Excellent. Who should my investigator contact to interview the witnesses prior to the hearing?

--
Dr. Gavin Clarkson, Esq.
gavin.clarkson@gmail.com


On Mon, Apr 2, 2018, 12:31 PM Enrico Pontelli <epontell@ad.nmsu.edu> wrote:

After consultation we have set the hearing date and time for:


April 13th, 2018

8:30am

Room 252, Domenici Hall


Enrico Pontelli

NMSU_Clarkson.00255

to relocate, or to reassign job duties, pending the investigation. The dean will be notified about the pendency of the internal investigation, but not about the factual details.

3. In lieu of paid administrative leave, a faculty member may be temporarily relocated to an alternate work environment or be assigned to perform alternate job duties, provided such temporary job modification will not in any way impede the investigation.

4. A faculty member placed on paid administrative leave shall remain available for communications from NMSU, and otherwise be ready to report to work upon request. If the faculty member has a need to be absent during a period of administrative leave, the faculty member shall obtain the appropriate approval.

## H. Confidential Investigation

The allegations, and any defense raised by the faculty member in response to the allegations, shall be investigated fully and fairly, within a reasonable amount of time, and as confidentially as possible; based upon the circumstances involved in each matter.

1. The investigative administrator shall consult with the assistant vice president of human resources or designee and/or the university general counsel for guidance and support relating to the performance of the internal investigation.

2. The faculty member accused shall be provided notice of the charges at the appropriate time during the investigation, which may be when the investigation begins, or may be later, depending upon the nature of the allegations. The faculty member shall be given an opportunity to respond to the charges during the investigation process.

3. The investigation shall be documented with factual findings and supporting evidence. The evidence may consist of witness statements or summaries, documents, audio or video recordings or photographs, or other exhibits. The investigative report, including supporting documentation or other evidence, shall be delivered to the assistant vice president of human resource services. The investigative administrator shall retain the investigative work papers, investigative report and supporting documentation or other evidence in a confidential and secure location.

4. The investigative administrator shall confer with the assistant vice president for human resource services and/or the office of university general counsel to decide whether or not the findings warrant corrective administrative action.

5. As soon as practicable, the charged faculty member shall be informed generally regarding the results of the investigation.

6. If the faculty member is exonerated by the investigation, then no documentation referencing the investigation shall remain in the official personnel file, unless requested by the faculty member.

7. If corrective action is going to be pursued, the faculty member will be provided a copy of the investigative report and access to the supporting documents at the

**NMSU_Clarkson.00269**

time that the corrective action is formally proposed.

8. In order to protect the positions and reputations of those persons who, in good faith, report reasonably suspected misconduct, the university prohibits retaliation in any form to be taken against the reporter or any person who cooperates in the investigative process. A complaint of suspected retaliation will also be cause for the initiation of a separate internal investigation to be conducted in coordination with the Office of Human Resource Services, and if substantiated, will be grounds for disciplinary action, up to and including termination of employment.

9. If the investigative report reflects that the alleged misconduct was not substantiated, the university will make efforts to restore the reputation of the faculty member, to the extent feasible and desired by the faculty member. Additionally, and depending upon the circumstances, the university may initiate a separate internal investigation in the event the investigative report indicates that the initial report of suspected misconduct or any testimony given as part of the internal investigation may have been intentionally falsified. If deliberate falsification of such a complaint or testimony is substantiated, it will be grounds for disciplinary action against the false reporter, up to and including termination of employment.

## I. Just Cause Required

Just Cause, capable of being proven by the standard of proof set forth at subsection K.3, is required before suspension without pay, reduction in salary, or involuntary dismissal may be imposed. Just cause includes dishonest behavior; gross or habitual neglect of professional responsibilities; willful violation of NMSU policy, rule or procedures; use of any improper influence to secure a promotion or privileges for individual advantage; or any other serious misconduct causing or creating the potential for harm to person, property or the institution. Just Cause may also be unrelated to any misconduct on the part of faculty, and could include a loss of licensure and/or clinical admitting privileges required for the performance of one's academic duties; or the medical inability to perform essential functions of the job.

## J. Administrative or Corrective Action

Corrective or other administrative action may be taken for serious misconduct or inability to perform the essential functions of one's job, if substantiated by the applicable standard of proof through the investigative fact finding process.

1. The types of administrative action anticipated by this rule include one or more of the following: written warning, mandatory attendance at training, suspension without pay, reduction in salary, and involuntary dismissal.

2. The range of corrective action which may be imposed for misconduct is not intended to require progressive discipline; rather, it is intended to allow the severity of the corrective action to match the seriousness of the policy, rule or

**NMSU_Clarkson.00270**

procedural violation or other misconduct. The corrective action, if any, to be imposed will vary depending upon the severity of the misconduct substantiated by the investigative findings.

3. The investigative administrator and the assistant vice president of human resource services shall coordinate regarding the appropriate level of corrective action or other administrative action, and if it does not warrant suspension without pay, reduction in pay, or involuntary dismissal, shall decide whether other corrective or administrative action is appropriate.

4. If suspension without pay, reduction in salary or involuntary dismissal is supported by the investigative report and recommended by the investigative administrator, the due process hearing requirements outlined in the remainder of this rule shall apply. See Also **Appendix ARP 10.50-A**.

## K. General Description of Due Process

A recommendation to dismiss from employment or to reduce salary attributable to regular faculty employment are serious corrective actions implicating one's property rights, which is why just cause and due process are required before such action may be taken.

1. Due process requires fair and timely hearing processes, before an impartial hearing official or body. The faculty member charged with misconduct and facing serious disciplinary action is entitled to a predetermination hearing, at which the relevant facts are presented by the parties, and determined by a hearing officer to be accurate prior to proceeding with the proposed corrective action. This ensures that the faculty member has had an adequate opportunity to present a defense to the claims and the evidence; it also ensures that the decision makers have an accurate understanding of the facts underlying the recom

2. The faculty member also has the right to a post-determination appeal to the executive vice president and provost, as well as the right to request a final review by the Chancellor.

3. At the pre-determination hearing and any subsequent appeal, the burden of proving just cause by the applicable standard of proof is on NMSU. The

4. mendation.standard of proof shall be clear and convincing evidence for all infractions, except for disciplinary action proposed for discrimination proscribed by federal and state law, which matters are investigated by the university's Office of Institutional Equity; the burden of proof when discrimination constitutes the grounds for which the disciplinary action is being taken shall be preponderance of the evidence. (See subsections D.4. and D.5.)

## L. Time Deadlines and Extensions

The pre-determination, appeal and final review processes will be conducted as expeditiously as possible.

### Comment 1

The section you are concerned about in Tribal Leakage, Section II, has Footnote 27 as part of the heading for "Section II. A Brief History of Tribal Law and Policy." Footnote 27 clearly references where an expanded version of Section II can be found in my *Tribal Bonds* article published by the North Carolina Law Review. The title of the section itself, "A Brief History of Tribal Law and Policy" clearly suggests that an expanded history is available elsewhere, which is confirmed by the contents of Footnote 27. So, it is ***false, misleading, and defamatory*** for this nameless third party to claim that I didn't reference my prior article, and I formally request that you remove any reference to that unsubstantiated accusation from my 2016 annual evaluation.

### Comment 2

I am confused by the accuser's claim that I didn't reference my prior article when I look at Footnote 27. Thus, I would argue that *Tribal Leakage* does not contain un-cited self-plagiarism. Is there information re-use, yes. Is it un-referenced, absolutely not.

As we discussed, I am writing across disciplines, and often half of my readers, even if they are law-trained readers, may have no idea about the history of tribal law and policy. I have therefore, over the years, developed a standard set of background prose that summarizes this history. The most complete version is contained in *Tribal Bonds*, the subject of Footnote 27. Almost all of my tribal finance articles summarize this history to varying degrees. I could ask the reader to go directly to the expanded *Tribal Bonds* article each time, but my legal academic mentors suggested using a condensed background section with a footnote pointing back to an anchor point. *Tribal Bonds* has consistently served as that anchor, and I have footnoted it accordingly for at least the past ten years (see Footnote 82 in *Accredited Indians*, Footnote 45 in *Unguarded Indians*, Footnote 66 in *Wall Street Indians*, and Footnote 39 in *Leveraging Tribal Sovereignty*. Note that for *Leveraging Tribal Sovereignty.* I also referenced *Not Because They Are Brown* as well in Footnote 39 because not all of the material I re-used in *Leveraging Tribal Sovereignty* was contained solely in *Tribal Bonds*).

I've reviewed the materials you provided in Appendix D, E, & F. I believe the evidence demonstrates that I have complied with the APA Policy on Self-Plagiarism. That policy allows duplication without self-attribution when "extensive self referencing is undesirable or awkward" (such as repeatedly citing myself in a footnote that has as its primary purpose a citation to another source). When duplication is more extensive, as is the case in Section II of *Tribal Leakage*, citation should be the norm, as I did in Footnote 27. While the policy points out that "what constitutes maximum acceptable length of duplicated material is difficult to define," it does suggest that any such duplication "must conform to legal notions of fair use."

Of critical importance is the APA's directive that "the core of the new document must constitute an original contribution to knowledge, and only the amount of previously published material necessary to understand should be included." That directive is precisely the case not only for *Tribal Leakage* but also for all of the other publications that re-use my standardized background material. Although the APA's suggestion is to preface the background material with "as I have previously discussed," the legal convention is to use a footnote at the beginning, such as Footnote 27.

CLARKSON_000029

The APA policy also mentions fair use, which is a copyright concept that I teach every semester, and it is certainly incorporated into the cultural norm for information re-use in legal academic writing. The best source I am aware of is an article in Communications of the ACM entitled *Self-Plagiarism or Fair Use?* In that article, Paula Samuelson, one of the foremost scholars on the law and ethics of information re-use, identified a widespread rule of thumb that if an article re-uses no more than 30% of an author's own prior work, such re-use is acceptable (1994). She notes her own cross-disciplinary challenge of writing legal articles and then re-using that material for a non-law audience. She recommends that any re-use not exceed 30% and should generally be less than 30%.

In the case of *Tribal Leakage*, a relatively short article of 4241 words, 946 words (including footnotes) were re-used from *Tribal Bonds*. Footnote 27 clearly points the reader to that prior work, and my information re-use rate is 22%. The historical background material is just that. Therefore, I submit that I have complied not only with the cultural norm in legal academia but also with the policy of the APA.

I will also note in my written response that the material between highlighted blocks 6 (blue) and items 7 (yellow) is an amplification of that background material, not found in *Tribal Bonds*. This amplification exists because the main focus of this article was on the nature of Trust Land, also a function of history. Thus, the additional material on the history of trust land belongs in Section II of Tribal Leakage, as it is part of the broader history of tribal law and policy.

I would also note that the *Tribal Leakage* article was reviewed by a panel of Indian Law experts when it was awarded the Hargrave Prize, and the Journal of Law, Economics, and Policy in a peer-reviewed Law and Econ journal, not merely a law review. None of those reviewers raised any objections to Section II and its accompanying reference contained in Footnote 27. The article was published according to BlueBook specifications as well as any editorial requirements of the Journal of Law, Economics, and Policy.

### Comment 3

Again, it is inaccurate to claim that I do not consistently reference my prior work. Footnote 27 in *Tribal Leakage*, Footnote 82 in *Accredited Indians*, Footnote 45 in *Unguarded Indians*, Footnote 66 in *Wall Street Indians*, and Footnote 39 in *Leveraging Tribal* Sovereignty are each evidence of that inaccuracy.

### Comment 4

The footnotes at issue are also part of the work referenced by Footnote 27. This re-use of footnotes is consistent with the APA policy (allowing duplication without self-attribution if such self-citation would seem awkward (such as repeatedly citing myself in a footnote that has as its primary purpose a citation to another source).

### Comments 5 and 6

I am surprised that articles and notes that I published while a student more than 15 years ago have any relevance to my 2016 annual report, but since you raised the issue, let me address it directly.

First, in the law review world law review articles and student notes are not regarded as the same. Articles carry more prestige than notes, and at that time, notes were often viewed on the same level as working papers. When I was considering going out on the job market in 2002, one of my mentors suggested that I update my student note from the Harvard Journal of Law and Public Policy and publish it as an article.

The Michigan Journal of Race and Law had offered to publish *Reclaiming Jurisprudential Sovereignty*, but I had already chosen to publish with the Kansas Law Review. I reached out to the editors of the MJRL and asked them if they would publish my note if I updated the status of the Akaka bill and go through their sub-citing process to improve the footnotes (if necessary) but otherwise leave the vast majority of the article the same. They agreed, since the earlier version was merely a note.

A second reason exists for this dual publication. I have often contended that advocating for tribal rights requires an appeal to both liberal and conservative audiences. This article provided an opportunity to make the same argument to opposite ends of the political spectrum as the Harvard Journal of Law and Public Policy is the official publication of the Federalist Society (representative of the right side of the political spectrum), and the Michigan Journal of Race and Law is one of the top critical race theory journals (representative of the left side of the political spectrum). This approach was a one-time experiment and was done with the full knowledge of the MJRL and JLPP (although since I retained the copyright to my article in both instances, I did not need to get JLPP's approval).

The resulting evidence supports my hypothesis, as the combined articles have been cited 22 times in other law review articles, 12 times in the MJRL version and 10 times in the JLPP version (I generally cite the MJRL version, so if my self-citations are removed, the results are still fairly evenly split, eight for MJRL and ten for JLPP)

Note that the JLPP version was also reprinted as a book chapter on Native Hawaiians in Indigenous Peoples, the Environment and Law (L. Watters, ed., Carolina Academic Press, 2004), that is also listed on my CV. Again, only my permission was needed for reprinting, as I retained the copyright to the JLPP article.

As for the article title in the JLPP publication on my CV, I am not even credited in the table of contents for having written the article (and it is listed under Recent Developments). Again, student notes are not as prestigious as articles. (It should be pointed out that for some law reviews, notes are completely un-credited.) I tried to get JLPP to publish it as an article since I was a doctoral student at HBS, but since I was also still a law student at the time, they stuck to their convention of listing it as a note without attribution other than to identify me as the author on the last page (not the way it appears in Lexis, by the way).

I am still very proud of that article, as it was the first (and to my knowledge) and only time that the Federalist Society has published anything on tribal sovereignty or Indian law.

CLARKSON_000031

## d) Ethical conduct pertaining to Gavin's research

Gavin's annual report for the current review period contains the citation of his recent article titled 'Tribal Leakage: How the Curse of Trust Land Impedes Tribal Economic Self-Sustainability, *Journal of Law, Economics, and Policy, 12*(2), 177 (Spring, 2016)', co-authored with A. Murphy. The following comments pertains to the contents of the above mentioned article.

**Serious Concern:**
It has been brought to my attention that Gavin uses, word-for-word, language that he used in articles published beginning 2002, without acknowledging that he is referring to, much less quoting from his prior articles when he copies from them. These articles include:

1. Not Because They Are Brown, but Because of Ea: Why the Good Guys lost in Rice v. Cayetano, and Why They Didn't Have to Lose, 7 Mich. J. Race and L 317 (2002) (hereafter referred to as Not Because They are Brown).

2. Tribal Bondage: Statutory Shackles and Regulatory Restraints on Tribal Economic Development (2006) (hereafter referred to as Tribal Bondage).

CLARKSON_000032

3. Symposium: Indigenous Economic Development: Sustainability, Culture, and Business: Wall Street Indians: Information as Asymmetry and Barriers to Tribal Capital Market Access, 12 Lewis & Clark L. Rev, 943 (Winter, 2008) (hereafter referred to as Indigenous Economic Development).

4. Accredited Indians: Increasing the Flow of Private Equity into Indian Country as a Domestic Emerging Market, Law & Economic Working Papers Archive 2003-2009 (2008) (hereafter referred to as Accredited Indians working paper).

5. Accredited Indians: Increasing the Flow of Private Equity into Indian Country as a Domestic Emerging Market, 80 U. Colo. L. Rev. 285 (2009) (hereafter referred to as Accredited Indians).

6. Unguarded Indians: The Complete Failure of the Post-Oliphant Guardian and the Dual-Edged Nature of Parens Patriae, 2010 U. Ill, L. Rev. Online 1119 (2010) (hereafter referred to as Unguarded Indians).

**Evidence:**

I refer you to the attached folder. The folder is organized in the following manner:

| | |
|---|---|
| Appendix A | : A summary of the paragraphs that have been borrowed from earlier published work. |
| Appendix B | : Contains the article under question.<br>How the Curse of Trust Land Impedes Tribal Economic Self-Sustainability, *Journal of Law, Economics, and Policy, 12*(2), 177 (Spring, 2016). |
| Appendix C | : Contains the relevant pages from the various articles from where material has been copied and pasted in the article given in Appendix A. The pages in this section are numbered P1 to P50. |
| Appendix D | : Printed copy of NMSU's policy on Academic Misconduct by a student.<br>http://studenthandbook.nmsu.edu/student-code-of-conduct/academic-misconduct/ |
| Appendix E | : A printed copy of the Ethics of Self-Plagiarism and a copy of a Study on Self-Plagiarism.<br>http://www.ithenticate.com/resources/papers/ethics-of-self-plagiarism |
| Appendix F | : The APA Policy on Plagiarism and Self-Plagiarism |
| Appendix G | : Contains two articles.<br>a) Recent Developments: Not Because They Are Brown, But Because of Ea: Rice v. Cayetano, 528 U.S. 495 (2000), 24 Harv. J.L. & Pub. Pol'y 921 (Summer, 2001)<br>b) Not Because They Are Brown, But Because of Ea: Why the Good Guys Lost in Rice v. Cayetano, and Why They Didn't Have to Lose, 7 Mich. J. Race & L. 317 (Spring, 2002). |

**Comments**

1. The summary page indicates that substantial portions of the article titled 'How the Curse of Trust Land Impedes Tribal Economic Self-Sustainability, *Journal of Law, Economics, and Policy, 12*(2), 177 (Spring, 2016), is copied from a variety of articles published in the earlier years (Appendix C).

CLARKSON_000033

2. The NMSU policy on plagiarism (Appendix D) mentions that '…If no citation is given then, borrowing any of the following would be an example of plagiarism; and one of the bullets mentions 'All or part of an existing paper or other resource'. If students are held to such a standard, I would expect that, at the minimum, faculty would be held to the same standard.

3. That Gavin knows he can and should cite his own work is manifest in the articles he has written. For example, in Tribal Leakage, Gavin cites to his own work on four occasions (see fns 27, 41, 48, and 74). And in Accredited Indians: Increasing the Flow of Private Equity into Indian Country as Domestic Emerging Market, 80 U. Colo. L. Rev. 285 (Spring, 2009), Gavin includes the following: "An earlier version of this paper was presented at National Native American Economic Summit in Phoenix, Arizona in May 2007." He does not, however, similarly acknowledge his prior work as the basis for any of the material at issue here.

*Wrong*

4. In addition to copying significant portions of the text wholesale from prior work, research associated with the prior work has also been copied; the majority of substantive footnotes are taken, word-for-word, from the footnotes in the prior materials. These footnotes are highlighted in pink. Moreover, Gavin has taken language from the text of prior materials and inserted it in footnotes of Tribal Leakage. For example, he has taken material from Not Because They Are Brown (Michigan)(page 8), and cut and paste it into a footnote in Tribal Leakage (fn. 44).

5. In addition to the self-plagiarism in Tribal Leakage, Gavin has obviously copied his own work in a variety of other articles, as is evidenced by the fact that materials in Tribal Leakage appear in a variety of earlier works. The most obvious example of Gavin's self-plagiarism is reflected in the fact that he published Recent Developments: Not Because They Are Brown, But Because of Ea: Rice v. Cayetano, 528 U.S. 495 (2000), 24 Harv. J.L. & Pub. Pol'y 921 (Summer, 2001) and then republished virtually the identical work as Not Because They Are Brown, But Because of Ea: Why the Good Guys Lost in Rice v. Cayetano, and Why They Didn't Have to Lose, 7 Mich. J. Race & L. 317 (Spring, 2002). He did not, in the second publication, even mention the first publication. Both are attached as Appendix G.

6. Gavin takes credit for both articles in his resume, but curiously does not use the strikingly similar titles. Instead, the first article is described in his resume as Recent Developments: Rice v. Cayetano, while the second is described as Not Because They Are Brown, But Because of Ea: Why the Good Guys Lost in Rice v. Cayetano, and Why They Didn't Have to Lose.

I urge Gavin to provide an explanation for the various concerns raised in the report as well as all the concerns raised above.

Appendix A  : A summary of the paragraphs that have been borrowed from earlier published work.

Appendix B  : Contains the article under question.
How the Curse of Trust Land Impedes Tribal Economic Self-Sustainability, *Journal of Law, Economics, and Policy, 12*(2), 177 (Spring, 2016).

Appendix C  : Contains the relevant pages from the various articles from where material has been copied and pasted in the article given in Appendix A. The pages in this section are numbered P1 to P50.

Appendix D  : Printed copy of NMSU's policy on Academic Misconduct by a student.
http://studenthandbook.nmsu.edu/student-code-of-conduct/academic-misconduct/

Appendix E  : A printed copy of the Ethics of Self-Plagiarism and a copy of a Study on Self-Plagiarism.
http://www.ithenticate.com/resources/papers/ethics-of-self-plagiarism

Appendix F  : The APA Policy on Plagiarism and Self-Plagiarism

Appendix G  : Contains two articles.

 a) Recent Developments: Not Because They Are Brown, But Because of Ea: Rice v. Cayetano, 528 U.S. 495 (2000), 24 Harv. J.L. & Pub. Pol'y 921 (Summer, 2001)

 b) Not Because They Are Brown, But Because of Ea: Why the Good Guys Lost in Rice v. Cayetano, and Why They Didn't Have to Lose, 7 Mich. J. Race & L. 317 (Spring, 2002).

CLARKSON_000035