IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DR. GAVIN CLARKSON, an individual,

      Plaintiff,

v.                                               Civ. No. 18-870 KRS/GBW

BOARD OF REGENTS OF NEW MEXICO
STATE UNIVERSITY, et al.,

      Defendants.

<u>**MEMORANDUM OPINION AND ORDER**</u>

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment, (Doc. 74), and Plaintiff's Motion for Partial Summary Judgment, (Doc. 75), both filed on January 11, 2021. The parties have filed responses, (Docs. 80, 81), and replies, (Docs. 83, 85), to the summary judgment motions, and have consented to the undersigned to conduct dispositive proceedings in this case pursuant to 28 U.S.C. § 636(c), (Doc. 10). Having considered the parties' briefing on the Motions for Summary Judgment, the record of the case, and relevant law, the Court **GRANTS** Defendants' Motion for Summary Judgment, **DENIES** Plaintiff's Motion for Partial Summary Judgment, **DISMISSES** Plaintiff's claims, and **VACATES** the trial and associated deadlines in this case.

I.     **<u>Background</u>**

Plaintiff is a former faculty member of New Mexico State University's College of Business whose employment was terminated on April 27, 2018. Plaintiff's claims have been dismissed as to Dr. Dan Howard, Provost; Dr. James Hoffman, Dean of the College of Business; and Dr. Nancy Oretskin, Professor in the College of Business. (Docs. 40, 51). Plaintiff's

remaining claims are: (1) that the Board of Regents of New Mexico State University ("NMSU") and Dr. Enrico Pontelli, Dean of the College of Arts and Sciences, violated his right to due process under 42 U.S.C. § 1983; and (2) that NMSU breached its contract with him.  (Doc. 27) at 13-15.  Defendants NMSU and Pontelli move for summary judgment on both causes of action; Plaintiff seeks summary judgment on his due process claim.  (Docs. 74, 75).

## II.    <u>Legal Standard</u>

Summary judgment is appropriate when there are no genuinely disputed issues of material fact and, viewing the record in the light most favorable to the non-moving party, the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Sinclair Wyo. Refin. Co. v. A&B Builders Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021); *Bruner v. Baker*, 506 F.3d 1021, 1025 (10th Cir. 2007).  Once the party moving for summary judgment properly supports its motion, the non-moving party must respond with some showing of an issue of genuine material fact. *Allen v. Denver Pub. Sch. Bd.*, 928 F.2d 978 (10th Cir. 1991), overruled on other grounds by *Kendrick v. Penske Transp. Svcs.*, 220 F.3d 1220, 1228 (10th Cir. 2000).  The non-moving party may not rest on averments in its pleadings, but instead must establish specific, triable issues. *Gonzales v. Millers Cas. Ins. Co. of Texas*, 923 F.2d 1417 (10th Cir. 1991). The mere existence of an alleged, immaterial factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  Moreover, "[t]he mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create a genuine issue or dispute a material fact.  To create a genuine issue, the nonmovant must present facts upon which a reasonable jury could find in favor of the nonmovant."  *Sinclair Wyo. Refin. Co.*, 989 F.3d at 765 (citation and quotations omitted).

2

### III.    Undisputed Facts[1]

Plaintiff joined the faculty of NMSU in the Fall of 2012 as an Associate Professor of Business Law in the College of Business' Department of Finance.  (Doc. 74-1) at 7.  He was a tenure-track faculty member subject to a six-year probationary period and a tenure review date originally scheduled for the Fall of 2017.  *Id.*  Each academic year, NMSU offered Plaintiff a "Tenure Track Annual Contract for Employment."  These contracts are "temporary" and "may or may not be renewed annually, in accordance with applicable NMSU policy."  (Doc. 74) at 5, ¶8 (quoting Doc. 74-1 at 12, Plaintiff's 2017-2018 contract; and Doc. 74-1 at 13, NMSU Administrative Rules and Procedures ("ARP") 9.40).

In June 2017, Plaintiff accepted a full-time position as Deputy Assistant Secretary for Policy and Economic Development ("DASPED") in the office of Indian Affairs at the U.S. Department of the Interior.  Pursuant to ARP 8.53, after three years of service, a faculty member may apply for professional leave, "normally not to exceed 1 year, for the purpose of undertaking some project that will directly benefit the university and person's professional development." (Doc. 74-1) at 14.  On June 19, 2017, Plaintiff submitted a request for an extended leave of absence, stating he had recently accepted an appointment to serve as the DASPED.  (Doc. 74-1) at 17.  Plaintiff asked for unpaid professional leave from August 14, 2017 to January 2020, with the option of extending that leave until January 2021, and for his tenure review to be reset from Fall 2017 to the Fall semester immediately following his return to campus.  *Id.* at 17-18.[2]  As the

---

[1] The following facts are undisputed and supported by exhibits referenced by the parties unless otherwise indicated.

[2] Plaintiff states that he asked for his leave to begin after the end of the summer semester because he was preparing to teach an online course at NMSU during the summer.  (Doc. 75-1) at 3, ¶14.

basis for his request, Plaintiff stated: his "appointment as DASPED is an extraordinary opportunity that [] I trust will justify an extended leave;" his "service as DASPED provides a direct reputational benefit to NMSU and the College of Business;" he "will also work to bring NMSU students, (particularly, but not limited to, tribal members) to Washington, DC for internships as well as internships at other federal offices throughout the country;" and "serving as DASPED will significantly benefit [his] professional development." (Doc. 74-1) at 17.

On June 28, 2017, Provost Howard responded to Plaintiff's leave request, congratulating him on his appointment as DASPED and stating it "is a singular honor for you and for New Mexico State University." (Doc. 74-1) at 19. Provost Howard granted Plaintiff's request for a leave of absence without pay from August 14, 2017, until January 2020. He stated he was "willing to consider an extension until January of 2021," but he required Plaintiff to "make a formal request for this extension by August 30 of 2019, at which time I, or whoever is Provost at the time, will decide whether to grant the extension." Provost Howard further agreed to reset Plaintiff's tenure review from Fall 2017 to the Fall semester immediately following his return to NMSU. *Id.* Additionally, on June 26, 2017 and September 27, 2017, NMSU's chancellor and Plaintiff, respectively, signed Plaintiff's Tenure Track Annual Contract of Employment for the 2017-2018 academic year. (Doc. 74-1) at 12.

On December 29, 2017, Plaintiff resigned as DASPED. (Doc. 27) at 5, ¶24; (Doc. 75-1) at 5, ¶24. According to Plaintiff, in November 2017 a "false news story appeared in the Washington Post alleging that [Plaintiff] had resigned because of a report about problems with the Indian Loan Guarantee Program during the Obama Administration." (Doc. 75-1) at 4, ¶20; (Doc. 75-4) at 25-28. Provost Howard later stated he was aware of this article and "assumed that Dr. Clarkson would resume his regular duties" in January 2018. (Doc. 74-1) at 37; (Doc. 75-1)

4

at 4, ¶21; (Doc. 80) at 29.  Plaintiff states that on December 14, 2017, he "received email correspondence confirming that he was still on [a] professional leave of absence."  (Doc. 75-1) at 5, ¶23.[3]  Plaintiff also states that on January 4, 2018, Dr. Harikumar Sankaran, NMSU's Finance Department Head, emailed Plaintiff about returning for the Fall Semester, and in response Plaintiff informed Dr. Sankaran that he had decided to run for Congress.  (Doc. 75-1) at 5, ¶¶28-29.[4]  On January 8, 2018, Plaintiff formally announced his candidacy for New Mexico's Second Congressional District, which was covered by the Las Cruces Sun News on January 9, 2018.  (Doc. 75-1) at 5-6, ¶¶32-33.

According to Plaintiff, on January 10, 2018, Dr. Sankaran told him to schedule a meeting with the Dean and Associate Dean of the College of Business to discuss the status of Plaintiff's leave.  (Doc. 75-1) at 6, ¶35.  On January 11, 2018, however, Plaintiff states that Dr. Sankaran told him that the Provost and NMSU General Counsel Liz Ellis cancelled the meeting.  (Doc. 75-1) at 6, ¶¶36, 38.  Plaintiff claims he attended a Finance Department faculty meeting on January 12, 2018, where he "reminded everyone that he is on leave while he is running for office."  (Doc. 75-1) at 6, ¶39.  The parties agree that Plaintiff was not on the schedule to teach in the Spring of 2018.  *Id.*; (Doc. 80) at 9.

On January 12, 2018, Provost Howard sent Plaintiff a Memorandum titled "Notification to Return to Work," stating "NMSU has become aware that your appointment has ended and you are no longer serving as Deputy Assistant Secretary for Policy and Economic Affairs" so "the

---

[3] Plaintiff does not state who this email was from, nor does he attach a copy of the email to his Motion for Summary Judgment or response to Defendants' Motion for Summary Judgment.

[4] Plaintiff does not attach a copy of these emails to his Motion for Summary Judgment or response to Defendants' Motion for Summary Judgment.

original agreement for leave without pay is now revoked." (Doc. 74-1) at 20. Provost Howard further stated "[t]he original approval for leave was specific to supporting your appointment, with no agreement for leave for any other purpose." *Id.* Plaintiff was informed that "[f]aculty are required to return for duty on Tuesday, January 16, 2018, a requirement that now holds for you." *Id.* Plaintiff was given two options: "Presuming that you do not intend to resign, please check in with your department head on that date. If you do not intend to report as required, you are expected to notify your college administrator of your decision to voluntarily resign your position. This notification must occur no later than Tuesday, January 16, 2018 by 5:00 PM." *Id.*

Plaintiff states he attempted to call Provost Howard on January 12, 2018 but was not able to reach him. (Doc. 75-1) at 6-7, ¶41. Plaintiff did not receive a paycheck from NMSU on January 12, 2018. (Doc. 75-1) at 7, ¶42. Plaintiff states that on January 16, 2018, he attended the College of Business convocation and checked in with Dr. Sankaran. (Doc. 75-1) at 7, ¶44. Also on January 16, 2018, Plaintiff emailed the Provost, Dean Hoffman, and Dr. Sankaran, and stated he was not resigning and that he challenged the Provost's authority to revoke his leave. (Doc. 75-4) at 29. Plaintiff stated that even though he checked in with his department head, "such action is not, and should not be construed in any way as, an acceptance or either of the two options that you propose or even agreeing that you have the authority to unilaterally revoke a leave.[] Therefore, I reject your attempt to revoke my leave." *Id.*

Plaintiff states that he received a call from Provost Howard on January 17, 2018, the Provost said he needed Plaintiff to teach classes that semester, and Plaintiff agreed to teach classes while on leave. (Doc. 81) at 10, ¶50. Plaintiff received an email on January 19, 2018 informing him that he was going to be scheduled for three "mini-mester" courses. (Doc. 75-4) at 30. On January 23, 2018, a meeting was held with Plaintiff, Provost Howard, and Dr. Ellis, but

Plaintiff "declined to continue the hearing" because he was not afforded the opportunity to have his own attorney present.  (Doc. 81) at 11, ¶53.  In an email to Dean Hoffman, Dr. Sankaran, Dr. Ellis, and the Provost on January 23, 2018, Plaintiff states "there is no authority for the provost to cancel my leave unilaterally," and he cautions them "to act appropriately and preserve all documentation that would be discoverable in subsequent litigation."  (Doc. 75-4) at 32.

On January 24, 2018, Provost Howard sent Plaintiff a Notice of Proposed Termination stating Plaintiff's refusal to return to work following revocation of the leave of absence "constitutes job abandonment and insubordination."  (Doc. 74-1) at 21.  This Notice explained that, pursuant to ARP 10.50, Plaintiff is entitled to a pre-determination hearing before an impartial hearing officer and the opportunity to present a defense.  The Notice further explained that Plaintiff may choose to have the hearing conducted by a dean serving as a hearing officer or before a Dean's Advisory Committee comprised of three members of the Faculty Senate.  *Id.* at 22; (Doc. 74-1) at 27 (ARP 10.50).  Since the Dean of the College of Business was involved in this matter and may be a witness, Plaintiff was informed that another dean will be appointed if Plaintiff choses to have the hearing conducted by a dean.  (Doc. 74-1) at 22.

On January 31, 2018, Plaintiff notified NMSU he planned to contest his termination through the pre-determination hearing pursuant to ARP 10.50, and he declined the option to use a Dean's Advisory Committee.  (Doc. 74-1) at 23.  In this notification, Plaintiff requested "all notes, phone records, emails, and any other records related to the decision to cancel my leave, as well as any university email or written correspondence of any form that mentions and/or references me since me [sic] November 1, 2017."  *Id.*  NMSU's Human Resource Services office, in consultation with the Faculty Senate Chair and NMSU General Counsel, assigned

College of Arts and Sciences Dean Dr. Pontelli to serve as the hearing officer.  (Doc. 74) at 9-10, ¶7.

NMSU states that it provided Plaintiff with all documents relevant to his proposed termination.  *See* (Doc. 74) at 8, ¶23; (Doc. 74-1) at 30.  On February 22, 2018, Plaintiff requested additional documents related to "the supposed self-plagiarism allegations" brought against him in the Spring of 2017.  (Doc. 74-1) at 34.  NMSU provided Plaintiff twenty-two additional documents and stated it had no more responsive documents.  *Id.* at 32-34.  Plaintiff disputes this and argues he was not provided with five affidavits, correspondence between the Provost and Dean Hoffman, an article regarding Plaintiff's departure from DASPED, and other "numerous communications regarding Dr. Clarkson's termination under false assertions of attorney-client privilege."  (Doc. 81) at 7, ¶19(d).  Defendants state they provided one of the requested affidavits to Plaintiff, but the remaining four affidavits were not provided because they were prepared for use in a non-university proceeding and were not maintained by NMSU.  (Doc. 80) at 15, ¶43.  Defendants further state that the article and all relevant, non-privileged emails were provided to Plaintiff during the hearing.  *Id.* at 13.

In addition, Plaintiff requested the appearances of four witnesses, all of whom appeared at the hearing and Plaintiff was given the opportunity to question.  (Doc. 74-1) at 2, ¶¶13, 16.  Plaintiff requested to have an investigator interview the witnesses before the pre-determination hearing, but Defendant Pontelli rejected this request, explaining that "was not within the scope of the informal fact finding pre-determination hearing process," and that the witnesses would be available for questioning during the hearing.  (Doc. 75-4) at 50.

At the hearing on April 13, 2018, Plaintiff appeared with an attorney whom he was permitted to consult during the hearing.  (Doc. 74-1) at 2, ¶18.  Plaintiff questioned three

witnesses: Dr. Ellis; Dean Hoffman; and Dr. Oretskin.  (Doc. 74-1) at 35.  Defendant Pontelli states that Plaintiff "repeatedly attempted to question witnesses regarding an allegation of plagiarism made against him in the spring of 2017," but Defendant Pontelli "limited questioning regarding the plagiarism allegation because I did not believe it was relevant to the Notice of Proposed Termination."  *Id.*  He further stated the "Notice was confined to Dr. Clarkson's failure to return to work as ordered; there were no allegations concerning academic performance or relationships with other faculty members."  (Doc. 74-1) at 2, ¶19.

On April 20, 2018, Defendant Pontelli issued a Final Determination.  (Doc. 74-1) at 35-37.  Defendant Pontelli documented the evidence presented at the hearing and found that Plaintiff's June 19, 2017 request for a leave of absence articulated that the project Plaintiff sought to undertake was to serve as the DASPED, so when Plaintiff left the DASPED appointment, the leave was terminated.  If Plaintiff wanted to undertake a different project, such as pursuing a run for Congress, he should have made a new leave request.  However Defendant Pontelli noted that the ability to pursue Plaintiff's proposed goals would be possible only once he gained a congressional seat, so the process of seeking the seat would not meet the university's requirement that the leave must benefit the institution.  *Id.* at 36.  Defendant Pontelli rejected Plaintiff's claim that NMSU engaged in retaliation based on Plaintiff's political affiliation and found that Plaintiff's claim of retaliation based on alleged plagiarism was irrelevant to the proposed notice of termination.  Defendant Pontelli further found that Provost Howard failed to timely communicate with Plaintiff that he expected Plaintiff would return to NMSU, and that communication with Plaintiff had been "antagonistic, especially at the Department and College levels, with limited attempts to seek mutual understanding and establish a positive protocol of communication and interaction."  *Id.* at 37.

9

Defendant Pontelli concluded that the proposed Notice of Termination should be upheld because "the motivation supporting the leave is currently not in place and there has been a failure on the part of Dr. Clarkson to inform the institution of the change of scope and to request, at the appropriate time, a novel accommodation." *Id.* Defendant Pontelli recommended adding to the Notice of Termination two additional actions: (1) that Plaintiff be allowed a final chance to request the opportunity to immediately resume his regular duties at NMSU in lieu of termination; and (2) if Plaintiff requests reinstatement and it is approved, Plaintiff be given the opportunity to submit a new leave request once he obtains a congressional seat, which should be impartially considered. *Id.* Plaintiff was informed that he could appeal the determination pursuant to ARP 10.50, Section M. *Id.* (ARP 10.50, Section M provides that a faculty member may file a post-determination appeal to a panel of senior faculty senators and may then seek final review by the Chancellor of the university).

On April 24, 2018, NMSU provided Plaintiff with a Notice of Termination and Option to Request Immediate Return. (Doc. 74-1) at 38. NMSU stated that as a result of the outcome of the pre-determination hearing, Plaintiff's employment will be terminated as of April 27, 2018 unless Plaintiff requests to immediately resume his regular duties as a faculty member at NMSU. On April 25, 2018, Plaintiff requested a post-determination appeal. (Doc. 74) at 10, ¶35; (Doc. 75-4) at 17. Throughout May, June, and July 2018, staff from the office of NMSU's Human Resources, Employee and Labor Relations, communicated multiple times with Plaintiff to coordinate mediation and to set the post-determination appeal hearing. (Doc. 74-1) at 39-45. Plaintiff was offered an opportunity for mediation, but the parties were unable to schedule a mediation session. *Id.* at 39-42. Thereafter, Plaintiff was contacted by NMSU Employee Relations staff on June 8, June 21, and July 2, 2018 about scheduling the post-determination

10

hearing. *Id.* at 42-43.  Plaintiff was given proposed dates, which he rejected, and was then asked

to provide alternate dates. *Id.*  On July 27, 2018, Plaintiff was again contacted by an Employee

Relations staff member noting that Plaintiff had not yet provided alternate dates for the hearing

and asking if Plaintiff was still interested in pursuing the post-action hearing. *Id.* at 44.  Plaintiff

responded on August 2, 2018, stating he had a new attorney who will provide proposed dates for

the post-action appeal hearing. *Id.* at 45.  No dates were provided and NMSU Human Resource

Services staff concluded Plaintiff had decided to abandon his post-determination appeal.  (Doc.

74-1) at 10, ¶14.  Plaintiff filed his lawsuit on July 28, 2018 in the Third Judicial District Court

of the State of New Mexico, and it was removed to this Court on September 14, 2018.  (Doc. 1).

## IV.  <u>Analysis</u>

### A.  Due Process Claim

Plaintiff claims Defendants violated his right to due process by revoking his leave of

absence and terminating him for an illegitimate and/or discriminatory purpose and without

meaningful notice or a fair hearing.  (Doc. 27) at 14-15.  Defendants move for summary

judgment on Plaintiff's due process claim for the following reasons: (1) NMSU is not a proper

party under 42 U.S.C. § 1983; (2) Defendant Pontelli is entitled to qualified immunity; (3)

Plaintiff does not have a right to constitutional due process as an untenured annual contract

employee; and (4) Plaintiff was afforded adequate due process under the Constitution.  (Doc. 74)

at 11.  Plaintiff contends he is entitled to summary judgment on his due process claim because

NMSU's policies and procedures created a constitutionally protected right to continued

employment, and he was deprived of that right without proper due process because NMSU did

not provide him with all relevant documents, his investigator was not permitted to interview

witnesses before the hearing, Defendant Pontelli excluded relevant testimony, and Defendant

Pontelli was biased against Plaintiff.  (Doc. 75) at 17-28.

### 1. NMSU Board of Regents is Not a Proper Defendant Under Section 1983

Defendants first move for summary judgment on Plaintiff's due process claim against

NMSU and Defendant Pontelli in his official capacity because they are not proper parties under

Section 1983.  (Doc. 74) at 11-12.  Plaintiff responds that he "is not bringing his suit against

NMSU as an entity," but instead he is suing the Board of Regents.  (Doc. 81) at 11.

A cause of action under 42 U.S.C. § 1983 requires the deprivation of a civil right by a

"person" acting under color of state law.  However, in *Will v. Mich. Dept. of State Police*, the

United States Supreme Court held that "neither a State nor its officials acting in their official

capacities are 'persons' under § 1983."  491 U.S. 58,71 (1989).  In addition, the Tenth Circuit

has explained that "a governmental entity that is an arm of the state for Eleventh Amendment

purposes is not a 'person' for section 1983 purposes."  *McLaughlin v. Bd. of Trs. of State

Colleges of Colo.*, 215 F.3d 1168, 1170 (10th Cir. 2000) (citation omitted).  An "arm of the

state" includes "entities created by state governments that operate as alter egos or

instrumentalities of the states," and the Tenth Circuit has consistently held that universities and

their boards of regents are arms of the state and, thus, not "persons" under Section 1983.

*Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000); *Barrett v. Univ. of N.M.*, 562 Fed.

Appx. 692, 694 (10th Cir. 2014) ("The Board is an arm of the State of New Mexico … ."); *Ross

v. Bd. of Regents of the Univ. of N.M.*, 599 F.3d 1114, 1117 (10th Cir. 2010) (district court was

correct in holding that plaintiffs failed to state a claim under Section 1983 because the suit

named only agencies of the State of New Mexico and state employees in their official

capacities); *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569, 575-77 (10th Cir. 1996) (holding

the University of Utah and the University of Utah Medical Center are arms of the state); N.M.

Const. Art. XII, §§ 3, 11; NMSA 1978 § 21-8-3 (providing NMSU is an educational institution

under control of the state, managed by a Board of Regents).

Here, Plaintiff states he is suing the Board of Regents and does not name individual

members.  Accordingly, Plaintiff's due process claim against the Board of Regents will be

dismissed with prejudice because the Board of Regents is not a "person" and therefore not a

proper defendant in a Section 1983 claim.  *See Will*, 491 U.S. at 71.  Plaintiff also argues the

Board of Regents is liable "for allowing his due process rights to be withheld by the university

through the actions of Defendant Pontelli, Dean Hoffman, Nancy Oretskin, etc.," and because the

Board "authorized and/or permitted the individual Defendants in this matter to 'try' [Plaintiff] in

a bias (sic) proceeding … ."  (Doc. 81) at 11.  Nevertheless, Section 1983 requires an assertion

that an *individual* deprived the plaintiff of a civil right—not an entity.  *See Ashcroft v. Iqbal*, 556

U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to … § 1983 suits, a plaintiff

must plead that each government official defendant, through the official's own individual

actions, has violated the Constitution."); *McLaughlin*, 215 F.3d at 1172 ("Having sued only the

Board rather than the individual trustees, Mr. McLaughlin has failed to state a claim against a

person covered by section 1983.").

## 2.   Defendant Pontelli in his Official Capacity

Plaintiff's due process claim for monetary damages against Defendant Pontelli in his

official capacity will also be dismissed with prejudice for the same reasons stated above.  *See*

*Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) ("[S]uing individuals in their official

capacity under § 1983 … is essentially another way of pleading an action against the [governmental entity] they represent.").

In addition to seeking monetary damages, Plaintiff also seeks: (1) an order enjoining NMSU from processing his termination until after his administrative appeal rights have been exhausted; and (2) all actions undertaken against him since April 26, 2018 regarding his employment and leave status to be undone.  (Doc. 27) at 15, ¶94.  A plaintiff may maintain an action against an individual defendant in his official capacity to the extent he seeks prospective relief for ongoing violations of the plaintiff's rights under federal law.  *See Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 495-96 (10th Cir. 1998).  However, such claims can only be asserted against a defendant who has "some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party."  *Chamber of Commerce of U.S. v. Edmondson*, 594 F.3d 742, 760 (10th Cir. 2010) (holding that a plaintiff seeking prospective injunctive relief against a public official in his official capacity must show the official has authority to perform the act).

Defendants state that Plaintiff's termination became effective prior to the filing of this lawsuit so that request for relief is now moot.  (Doc. 74) at 12.  Moreover, Defendants assert that Defendant Pontelli does not have the authority to grant the relief Plaintiff seeks.  *Id.*  Plaintiff does not dispute these assertions.  The Court, therefore, holds that Plaintiff's due process claim for injunctive relief against Defendant Pontelli in his official capacity also fails as a matter of law and shall be dismissed with prejudice.  *See Barrett*, 562 Fed. Appx. at 695 (explaining that in order to obtain prospective equitable relief the plaintiff must "adequately allege the individual official's duty to enforce the statute in question and a demonstrated willingness to do so"); *Barrett v. Univ. of N.M. Bd. of Regents*, 2013 WL 12085687, at *4 (D.N.M.) (dismissing the

14

plaintiff's claim for injunctive relief because she "failed to allege how the Individual Defendants are able to address the harms she alleges if she succeeds in obtaining an injunction from this Court"); *Klein v. Univ. of Kan.*, 975 F. Supp. 1408, 1417 (D. Kan. 1997) (explaining that the state official must have the power to perform the act required to overcome bar of immunity under the Eleventh Amendment).

### 3. Qualified Immunity

Next, Defendants move for summary judgment on Plaintiff's due process claim against Defendant Pontelli in his individual capacity on the basis of qualified immunity. (Doc. 74) at 13-20. Qualified immunity provides "immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). "When a defendant raises the defense of qualified immunity, the plaintiff bears the burden to demonstrate that the defendant violated his constitutional rights and that the right was clearly established." *Singh v. Cordle*, 936 F.3d 1022, 1033 (10th Cir. 2019) (citation omitted). The law was "clearly established" only if it "was sufficiently clear that every reasonable official would understand that what he [was] doing [was] unlawful." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quotation marks omitted). To make such a showing, the plaintiff "must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015) (quotation marks omitted).

"To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004). A substantive

15

due process claim, however, "bars certain government actions regardless of the fairness of the procedures used to implement them." *Brown v. Montoya*, 662 F.3d 1152, 1172 (10th Cir. 2011). A substantive due process claim arises when a plaintiff alleges the government deprived him of a fundamental right and protects against the exercise of government authority that "shocks the conscience." *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008).

### a. Protected Property Interest

Plaintiff claims he has a constitutionally protected property interest in continued employment at NMSU and in a fair tenure review. (Doc. 27) at 14, ¶85. Defendants, however, assert that as a non-tenured professor, Plaintiff did not have a protected property interest in his continued employment or tenure review. (Doc. 74) at 18-19. Defendants argue that neither the "probationary nature" of Plaintiff's employment, nor the Provost's grant of a leave of absence, created a legitimate claim of entitlement to continued employment with NMSU. *Id.* at 18.

Defendants are correct that if Plaintiff had been a tenured professor, he would have possessed a protected property interest in his continued employment. *See Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 517 (10th Cir. 1998). Nevertheless, the Tenth Circuit has explained that property interests can be created by "state-law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Darr v. Town of Telluride, Colo.*, 495 F.3d 1243, 1251 (10th Cir. 2007) (quoting *Bd. of Reg. v. Roth*, 408 U.S. 564, 577 (1974)). To create a property interest, the state-law rule or understanding must give the recipient "a legitimate claim of entitlement to the benefit." *Roth*, 408 U.S. at 577. For example, "an employee may possess a property interest in public employment if she has tenure, a contract for a fixed term, an implied promise of continued employment, or if state law allows dismissal only for cause or its equivalent." *Darr*, 495 F.3d at 1251 (citations omitted).

16

Defendants do not argue that Plaintiff was an at-will employee.  *See Bishop v. Wood*, 426 U.S. 341, 345 n.8 (1976) ("At-will employees lack a property interest in continued employment.").  Instead, Defendants assert that Provost Howard's "discretionary grant of Plaintiff's request for a leave of absence neither creates a contract nor changes the probationary nature of Plaintiff's employment."  (Doc. 74) at 18.  Defendants' argument fails to take into account that the leave of absence was tied to Plaintiff's contract for the 2017-2018 academic year that set forth the terms of Plaintiff's employment and stated the contract "may be terminated by the university for cause, for reasons of financial exigency, or in the case of program or position elimination."  (Doc. 74-1) at 12.  In addition, ARP 10.50 Sections J and K provide that an employee can only be dismissed upon a showing of just cause (such as dishonest behavior, neglect of professional responsibilities, or other misconduct), and the employee is entitled to due process including "fair and timely hearing processes, before an impartial hearing official or body."  (Doc. 74-1) at 26-27.  The Court, therefore, finds that Plaintiff possessed a property right in his continued employment for the 2017-2018 academic year as set forth in the "Tenure Track Annual Contract of Employment 2017-2018" and NMSU's ARP 10.50.  *See, e.g., Inskeep v. City of Farmington*, 2014 WL 12789006, at *7 (D.N.M.) ("[B]ecause Plaintiff is not an at-will employee, and could only be fired for cause, Plaintiff possesses a state-created property right under Tenth Circuit precedent").

### b.  Fairness of Termination Process

Having found Plaintiff possessed a protected interest in his continued employment during the 2017-2018 academic year, the Court must next determine whether Plaintiff was afforded an appropriate level of process prior to his termination.  *See Montgomery*, 365 F.3d at 935.  Plaintiff claims he did not receive adequate due process because Defendants failed to provide him with

documents supporting his termination, his investigator was not allowed to interview witnesses prior to the hearing, and records were presented at the hearing that he did not know about ahead of time. (Doc. 75) at 21-22. Plaintiff also claims Defendant Pontelli improperly limited testimony at the hearing by disallowing questions regarding plagiarism accusations from Spring 2017, and Defendant Pontelli was biased against him because he was selected by and directly answers to Provost Howard. *Id.* at 22-23, 27-28.

In analyzing a due process claim and whether appropriate processes were in place to protect the individual, courts must "ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure … and any remedies for erroneous deprivations provided by statute or tort law." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). The central tenets of procedural due process are: (i) notice, (ii) the right to be heard, and (iii) a hearing. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985); *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970). In addition, courts consider the private interest affected; the risk of deprivation through existing procedures and the value of additional measures; and the burden placed on the government to adopt such safeguards. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The Tenth Circuit further explains that before public employees can be terminated, they are entitled to "notice and opportunity for a hearing appropriate to the nature of the case." *Valencia v. Bd. of Reg. of the Univ. of N.M.*, 2021 WL 1529748, at \*6 (10th Cir.) (quoting *Loudermill*, 470 U.S. at 542). The hearing requires: "(1) oral or written notice to the employee of the charges against him; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to present his side of the story." *Id.* (quoting *Merrifield v. Bd. of Cnty. Cmmr's for Cnty. of Santa Fe*, 654 F.3d 1073, 1077-78 (10th Cir. 2011)). However, "a full evidentiary

hearing is not required prior to an adverse employment action; it suffices that the employee is given notice and an opportunity to be respond." *Id.* The Tenth Circuit has "upheld as sufficient to meet these requirements informal proceedings such as pretermination warnings and an opportunity for a face-to-face meeting with supervisors, and even a limited conversation between an employee and his supervisor immediately prior to the employee's termination." *Id.* ("We have called such procedures 'not very stringent.'") (citation omitted).

In a similar suit challenging the due process afforded in a pretermination hearing involving NMSU, the court explained: "Where comprehensive post-termination procedures are available, as they were to [the plaintiff] per § 4.05.11 of the NMSU Policy Manual (but which he rejected as a sham), a public employee dischargeable solely for cause is entitled only to a very limited hearing prior to his termination." *Law v. N.M. State Univ.*, 2010 WL 11590707, at *6 (D.N.M.) (citations omitted). Moreover, the pretermination hearing "need not definitively resolve the propriety of the discharge," but "should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill*, 470 U.S. at 545-46. In sum, the pretermination hearing "is merely the employee's chance to clarify the most basic misunderstandings or to convince the employer that termination is unwarranted." *Powell v. Mikulecky*, 891 F.2d 1454, 1458 (10th Cir. 1989).

Here, Plaintiff was notified of his proposed termination and informed it was because he refused to return to work following revocation of his leave of absence. (Doc. 74-1) at 21. Plaintiff was informed of his right to a hearing pursuant to ARP 10.50 and the opportunity to present a defense, and was provided the option of having the hearing conducted by a dean serving as a hearing officer or before a Dean's Advisory Committee comprised of three members

19

of the Faculty Senate. *Id.* at 22.  The Court finds these procedures were sufficient to provide

Plaintiff notice of the charges against him and the process to present his side at a hearing.

Plaintiff argues he did not receive all the documents he requested and was not able to

interview witnesses prior to the hearing, which deprived him of his ability to present a defense.

Defendants counter that they provided all relevant, non-privileged documents to Plaintiff that

were relied on by Defendant Pontelli and the witnesses at the hearing.  *See* (Doc. 74) at 8, ¶23;

(Doc. 74-1) at 30.  The only documents Plaintiff specifically describes that he was not permitted

to obtain were the four affidavits pertaining to a plagiarism complaint from the Spring of 2017.

Plaintiff's termination was based his refusal to return to NMSU as a paid faculty member after

his leave of absence was revoked.  Accordingly, the affidavits were not relevant because the

plagiarism issue was not the basis for Plaintiff's termination.  Similarly, Defendant Pontelli did

not deprive Plaintiff of due process by limiting questions at the hearing to the issues pertaining to

his leave of absence and failure to return to NMSU.  Plaintiff points to no cases requiring

anything further than an explanation of the evidence the employer relied on for the termination

decision, which was provided to Plaintiff here.  *See Merrifield*, 654 F.3d at 1078 (finding

adequate due process where the plaintiff was given "an explanation of the employer's

evidence").

Plaintiff also asserts that Defendants' failure to provide him with all the documents he

requested violated ARP 10.50(H)(6), which provides: "If corrective action is going to be

pursued, the faculty member will be provided a copy of the investigative report and access to the

supporting documents at the time the corrective action is formally proposed."  (Doc. 75) at 21.

The Tenth Circuit has made clear, however, that a violation of procedures guaranteed by a

university's rules does not constitute a cognizable federal constitutional claim for violation of

20

due process.  In *Hulen v. Yates*, the Tenth Circuit stated that "[t]hroughout this litigation there have been repeated references to, and apparent reliance on, the Faculty Manual's procedural rules.  But in deciding whether a state has violated a person's constitutional right to procedural due process, we should pay no attention to whether the state has complied with procedures mandated by state law." 322 F.3d 1229, 1246-47 (10th Cir. 2003).  Instead, "it is purely a matter of federal constitutional law whether the procedure afforded was adequate."  *Id.*  Therefore, a violation of NMSU's ARP cannot constitute a denial of Plaintiff's federal constitutional due process rights.  *See also Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998) (police officer alleged procedural due process violation when demotion in rank did not comply with the procedures guaranteed by his collective bargaining agreement; court held "the Constitution does not require that each individual receive the procedural guarantees provided for by the instrument which bestows a property interest."); *Levitt v. Univ. of Texas*, 759 F.2d 1224, 1229 (5th Cir. 1985) ("Even if the University failed to follow its own rules, it nevertheless gave [the professor] all the process to which he was entitled under the Constitution.") (cert. denied, 474 U.S. 1034 (1985)).

Additionally, Plaintiff claims he was deprived of due process because he was denied the right to have an investigator interview witnesses before the pre-determination hearing. Defendant Pontelli rejected this request because it "was not within the scope of the informal fact finding pre-determination hearing process," and explained that the witnesses would be available for questioning during the hearing.  (Doc. 75-4) at 50.  While due process requires an opportunity for the employee to present his side of the story, a formal evidentiary hearing is not required prior to an adverse employment decision.  *Loudermill*, 470 U.S. at 545.  Plaintiff does not explain how the lack of pre-hearing interviews affected his ability to present his side of the

story; indeed, all of Plaintiff's requested witnesses appeared at the hearing and Plaintiff was able to question them with the assistance of his counsel. Therefore, the denial of Plaintiff's request to interview witnesses prior to the hearing does not constitute a violation of his due process rights. *See Tonkovich*, 159 F.3d at 519-21 (holding due process does not require a professor be allowed to interview adverse witnesses prior to a hearing, to have access to every piece of evidence requested, and to compel witnesses to testify).

Plaintiff also asserts Defendant Pontelli was biased against him because he reports to the Provost. First, Plaintiff had the opportunity to choose the option of a Dean's Advisory Council instead of a dean to serve as the hearing officer but declined that option. Second, Plaintiff makes only conclusory allegations that Defendant Pontelli was biased because he was employed by the university and the subordinate of the Provost. The Tenth Circuit has explained there is no clearly established right to a professional hearing officer or a hearing officer not employed by the university proposing the adverse action. *Tonkovich*, 159 F.3d at 519. Instead, "a substantial showing of personal bias is required to disqualify a hearing officer or tribunal in order to obtain a ruling that a hearing is unfair." *Corstvet v. Boger*, 757 F.2d 223, 229 (10th Cir. 1985). Plaintiff makes no such showing here. Moreover, Defendant Pontelli's impartiality is reflected in his decision that was not fully favorable to NMSU, found fault with NMSU's communications with Plaintiff, and recommended allowing Plaintiff a chance to request the opportunity to resume his regular duties at NMSU and to submit a new leave request. (Doc. 74-1) at 37. Therefore, the Court finds no disputed issues of material fact regarding Defendant Pontelli's impartiality. *See Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A.*, 858 F.3d 1324, 1334 (10th Cir. 2017) ("To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.").

The Court also addresses whether Plaintiff was provided due process as to his post-termination appeal.  Plaintiff does not specifically argue that his post-termination appeal relates to his claim for violation of due process, but he does state that he was prevented from exhausting his administrative remedies because NMSU did not proceed with the appeal hearing.  (Doc. 81) at 22-23.  The evidence in the record shows that Plaintiff requested a post-determination hearing, (Doc. 75-4 at 17), and for three months NMSU staff communicated with Plaintiff trying to set the appeal hearing, (Doc. 74-1 at 39-45).  Specifically, Plaintiff was contacted by NMSU staff on June 8, June 21, and July 2, 2018, with proposed dates, which Plaintiff rejected, and then Plaintiff was asked to provide alternate dates.  *Id.* at 42-43.  On July 27, 2018, Plaintiff was again contacted by a staff member noting that Plaintiff had not yet provided alternate dates for the hearing and asking if Plaintiff was still interested in pursuing the post-action hearing.  *Id.* at 44. Plaintiff responded on August 2, 2018, stating he had a new attorney who will provide proposed dates for the post-action appeal hearing.  *Id.* at 45.  Since no dates were provided, and Plaintiff filed this lawsuit on July 28, 2018, NMSU concluded Plaintiff had decided to abandon his post-determination appeal.  (Doc. 74-1) at 10, ¶14.

The Tenth Circuit has explained that "[o]ne cannot be denied something one did not ask for," and that a party's "failure to take advantage of the procedural opportunities available to her for her appeal constitutes a waiver of any claims she has that she was denied a right to procedural due process."  *See Kirkland v. St. Vrain Valley Sch. Dist. No. Re-1J*, 464 F.3d 1182, 1194-95 (10th Cir. 2006) (citation omitted).  Therefore, the Court concludes that Plaintiff's multiple rejections of proposed dates for the appeal hearing, and failure to propose alternate dates or respond to NMSU's inquiries, constitutes failure to take advantage of the procedural opportunity afforded him and waiver of a claim for denial of procedural due process regarding the appeal.

23

In conclusion, the undisputed facts show that Plaintiff was notified of the reasons for his proposed termination, given an opportunity to be heard and present his side at a hearing, provided the documents Defendants relied on at the hearing, and presented with an opportunity to appeal his termination decision, which he abandoned. Therefore, "the totality of the procedures and opportunities which the University afforded plaintiff were sufficient to satisfy constitutional requirements." *Siebert v. Univ. of Okla. Health Sciences Ctr.*, 867 F.2d 591, 599 (10th Cir. 1989), abrogated on other grounds by *Fed. Lands Legal Consort. v. United States*, 195 F.3d 1190, 1195 (10th Cir. 1999). Plaintiff "was not fired out of the blue," "for reasons he did not know," or "without being given the opportunity to present his side of the story." *Id.* Despite Plaintiff's claims that he was denied relevant documents and was unable to question witnesses about plagiarism allegations, "[d]ue process does not mandate that all evidence on a charge or even the documentary evidence be provided, only that such descriptive evidence be afforded as to permit [the employee] to identify the conduct giving rise to the dismissal and thereby enable him to make a response." *Law*, 2010 WL 11590707, at *8. The pretermination process NMSU offered Plaintiff "extended well beyond that brief face-to-face encounter with a supervisor that courts have so often held satisfies due process demands where post-termination procedures are available." *Id.* In addition, Plaintiff does not make a substantial showing of personal bias on the part of the hearing officer, nor does he present any facts indicating the hearing process was fundamentally unfair.

For the foregoing reasons, the Court finds no disputed issues of material fact as to Plaintiff's due process claim and concludes that no reasonable jury could find that Plaintiff was denied his constitutional right to due process. Moreover, Plaintiff has not shown that Defendants abused their authority "in a manner that shocks the conscience." *Seegmiller*, 528 F.3d at 767.

24

Therefore, the Court finds that Defendant Pontelli is entitled to qualified immunity for Plaintiff's due process claim.

### B.  Breach of Contract Claim

Defendants also move for summary judgment on Plaintiff's breach of contract claim. Plaintiff claims the document granting him a leave of absence is a contract and that NMSU breached the contract "unilaterally and without any authority under law or regulation" when Provost Howard revoked Plaintiff's leave of absence.  (Doc. 27) at 13.  Plaintiff claims a "second breach occurred when the Provost ordered Defendant Clarkson to go up for tenure in the Fall of 2018 rather than the Fall of 2020." *Id.*

To establish a claim for breach of contract, a plaintiff must demonstrate: (1) the existence of a contract; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages resulting from the breach.  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1212 (10th Cir. 2009).  The elements of a contract in New Mexico are offer, acceptance, consideration, and mutual assent.  *Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-29, ¶ 9, 121 N.M. 728, 918 P.2d 7.  Consideration is a bargained-for exchange between the parties where something "is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise."  *Smith v. Village of Ruidoso*, 1999-NMCA-151, ¶33, 128 N.M. 470, 994 P.2d 50.  New Mexico law provides for a "contextual approach" to contract interpretation.  *Mark V, Inc. v. Mellekas*, 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993).  Thus, courts are not restricted to the four corners of the document and, instead, may consider extrinsic evidence when evaluating whether there is ambiguity in a contract.  *C.R. Anthony Co. v. Loretto Mall Partners*, 112 N.M. 504, 508-09, 817 P.2d 238, 242-43 (1991); *see also Aesc Ins. Grp. of New Mexico v. Aspen Ins. UK, Ltd.*, 2012 WL 12903077, at *3 (D.N.M.)

25

(explaining that whether an agreement contains an ambiguity "is a matter of law to be decided by the trial court" which "may consider collateral evidence of the circumstances surrounding the execution of the agreement").

NMSU's ARP 8.53 allows faculty members to seek a leave of absence "for the purpose of undertaking some project that will directly benefit the university and the person's professional development." (Doc. 74-1) at 14. Plaintiff submitted a request for an extended leave of absence pursuant to ARP 8.53 stating he had recently accepted an appointment to serve as the DASPED. (Doc. 74-1) at 17. He asked for unpaid professional leave from August 14, 2017 to January 2020, with the option of extending that leave until January 2021, and for his tenure review to be reset from Fall 2017 to the Fall semester immediately following his return to campus. *Id.* at 17-18. As the basis for his request, Plaintiff stated his "appointment as DASPED is an extraordinary opportunity that [] I trust will justify an extended leave," his "service as DASPED provides a direct reputational benefit to NMSU and the College of Business," he "will also work to bring NMSU students, (particularly, but not limited to, tribal members) to Washington, DC for internships as well as internships at other federal offices throughout the country," and "serving as DASPED will significantly benefit [his] professional development." *Id.* at 17. In response to Plaintiff's leave request, Provost Howard congratulated Plaintiff on his appointment as DASPED and stating it "is a singular honor for you and for New Mexico State University." (Doc. 74-1) at 19. Provost Howard granted Plaintiff's request for a leave of absence without pay from August 14, 2017, until January 2020. He did not grant Plaintiff's request for leave until January of 2021 and directed Plaintiff to "make a formal request for this extension by August 30 of 2019, at which time I, or whoever is Provost at the time, will decide whether to grant the extension."

Provost Howard further agreed to reset Plaintiff's tenure review from Fall 2017 to the Fall semester immediately following his return to NMSU.  *Id.*

Defendants contend the document granting Plaintiff's leave of absence request does not constitute a binding contract for three reasons.  First, Defendants argue that NMSU policy provides that its ARPs shall not create any type of contract, implied or otherwise, between the Board of Regents and its employees.  (Doc. 74) at 22.  Defendants, therefore, argue that the Provost's letter "is merely evidence of how ARP 8.53 was implemented in this case."  While NMSU's ARPs may not create a contract between NMSU and its employees, the agreement for Plaintiff to take a leave of absence is not based on ARP 8.53 alone.  Instead, Plaintiff offered to take a leave of absence without pay to serve as DASPED, and the Provost accepted that offer. The parties engaged in a "bargained-for exchange" and came to a mutual agreement.  While Plaintiff claims his leave of absence was not contingent on him serving as DASPED, Provost Howard clearly accepted Plaintiff's offer for a leave of absence for the purpose of serving as DASPED until January 2020.  Indeed, Plaintiff's alternative request for a leave of absence until January 2021, without providing a reason for that additional time, was rejected by the Provost. Therefore, reading Plaintiff's leave request and Provost Howard's response together, and considering they were made pursuant to ARP 8.53, the Court finds the parties entered into a contract for Plaintiff to take a leave of absence to January 2020 for the purpose of serving as DASPED and to extend Plaintiff's tenure review to the Fall semester immediately following his return to NMSU.  *See Galaxy CSI, LLC v. Los Alamos Natl. Bank*, 2006 WL 8444059, *3 (D.N.M.) ("When the contracting parties' expressions of mutual assent are clear and unambiguous, a court must give effect to those expressions.") (citing *C.R. Anthony v. Loretto Mall Partners*, 1991-NMSC-070, ¶17, 112 N.M. 504, 817 P.2d 238 (1991)).

Second, Defendants argue that the leave of absence agreement was not a binding contract that allowed Plaintiff to remain on leave until January 2020 with no requirement to remain in the DASPED position.  (Doc. 74) at 22.  Read in this way, Defendants contend the contract lacks a bargained-for exchange and mutuality of obligation and is contrary to the clear intent of ARP 8.53 which states that leave must be for a project that will directly benefit the university and the employee's professional development.  The Court agrees.  For the reasons stated above, the Court concludes that the parties agreed for Plaintiff to take a leave of absence for the purpose of serving as DASPED; it was not an opened-ended leave of absence for any other reason.

Third, Defendants argue that if the leave of absence was a contract, it was superseded by the contract for the 2017-2018 academic year, which was executed by Plaintiff on September 27, 2017, and states that it "supersedes all other agreements."  (Doc. 74) at 23-24.  Defendants state that because the 2017-2018 contract makes no mention of professional leave, Plaintiff was under contract to NMSU for 2017-2018.  *Id.* at 24.  Plaintiff's 2017-2018 Annual Contract of Employment states it is made "[i]n accordance with the … official policies of the University as set forth in the most recent Regents Policy Manual and the Administrative Rules and Procedures."  (Doc. 74-1) at 12.  The contract, therefore, was subject to the leave of absence option available to Plaintiff in ARP 8.53, which he exercised.  *See Snyder v. Bd. of Regents for Agric. & Mech. Colleges ex rel. Oklahoma State Univ. Ctr. for Health Scis.*, 2020 WL 827412, at *47 (W.D. Okla.) (explaining that a university's policies are incorporated into an agreement that refers to the policies).  Accordingly, the 2017-2018 contract does not alter the Court's conclusion that the parties entered into a binding contract for Plaintiff to take a leave of absence to serve as DASPED.

28

Having found that a contract was created when Plaintiff was granted a leave of absence, the Court next considers whether that contract was breached.  Since the leave of absence was based on Plaintiff serving as DASPED, when Plaintiff resigned that position, the leave of absence ceased to operate and Plaintiff was required to return to NMSU pursuant to the parties' 2017-2018 academic year contract.  Plaintiff claims Defendants "unilaterally and without any authority under law or regulation" breached the contract by revoking Plaintiff's leave of absence."  To the contrary, ARP 8.53 provides for a leave of absence only for a purpose that directly benefits the university, which "must be detailed in the application."  (Doc. 74-1) at 14. Once that purpose ended, the parties were no longer bound by the leave of absence agreement and Plaintiff was required to perform under the 2017-2018 contract.  Instead, Plaintiff refused to acknowledge his leave of absence had ended and did not return to his duties as a faculty member or request a second leave of absence.  Therefore, Plaintiff cannot demonstrate due performance under the leave of absence agreement, so Defendant's revocation of the leave was not a breach. Accordingly, the Court finds as a matter of law there was no breach of contract and grants summary judgment for Defendants on this claim.

## V.    <u>Conclusion</u>

For the reasons stated above, the Court holds that NMSU and Defendant Pontelli in his official capacity are not proper defendants under Section 1983 for Plaintiff's due process claim, and Defendant Pontelli is entitled to qualified immunity for Plaintiff's individual capacity due process claim.  The Court further holds that both Defendants are entitled to judgment as a matter of law on Plaintiff's breach of contract claim.  Because the Court grants Defendants' Motion for Summary Judgment on Plaintiff's remaining claims, the Court finds it unnecessary to reach

Defendants' additional claims that Plaintiff failed to exhaust his administrative remedies for his breach of contract claim or that Plaintiff's requested relief for reinstatement is moot.

**IT IS THEREFORE ORDERED** that:

1. Defendants' Motion for Summary Judgment, (Doc. 74), is GRANTED;

2. Plaintiff's Motion for Partial Summary Judgment, (Doc. 75), is DENIED;

3. Plaintiff's claims are DISMISSED with prejudice; and

4. The trial and all associated deadlines are VACATED.

KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent